764 N.W.2d 648 (2009)
17 Neb. App. 377
In re INTEREST OF LUIS G., a child under 18 years of age.
State of Nebraska, appellee,
v.
Luis G., appellant.
In re Interest of Jose G., a child under 18 years of age.
State of Nebraska, appellee,
v.
Jose G., appellant.
Nos. A-08-770, A-08-777, A-08-778.
Court of Appeals of Nebraska.
February 24, 2009.
*650 Jerom E. Janulewicz, of Mayer, Burns, Koenig & Janulewicz, Grand Island, for appellants.
No appearance for appellee.
INBODY, Chief Judge, and SIEVERS and MOORE, Judges.
INBODY, Chief Judge.

INTRODUCTION
Jose G. and Luis G. appeal consolidated cases Nos. A-08-770, A-08-777, and A-08-778 from an order of the Hall County Court, juvenile division, vacating an order regarding Jose and Luis' eligibility for special immigrant juvenile status. For the following reasons, we reverse, and remand with directions.

STATEMENT OF FACTS
In late 2001 or early 2002, Jose and Luis came from Guatemala to the United States, undocumented, with their mother, and eventually to Grand Island, Nebraska. After coming to the United States, the boys did not have much, if any, contact with their father, who did not travel to the United States with the family. Jose and Luis' older sister and brother also reside in Grand Island.
This appeal arises from three separate juvenile cases in Hall County Court regarding Jose and Luis. In 2005, separate juvenile petitions, each arising from separate incidents involving Jose and Luis, were filed, alleging that each child was within the court's jurisdiction pursuant to Neb.Rev.Stat. § 43-247(1) (Reissue 2004).
In case No. A-08-770, in 2005, Luis admitted to one count of shoplifting and was placed in the temporary custody of the Office of Juvenile Services (OJS) for a residential evaluation and was eventually committed to the custody of the Department of Health and Human Services (DHHS), OJS. In case No. A-08-777, in 2005, Jose admitted to two counts of trespassing and was committed to the custody of DHHS, OJS. In 2005, a second petition was filed on Jose, case No. A-08-778, alleging assault in the third degree, resisting arrest, and disturbing the peace. Since the juveniles have been adjudicated, review *651 hearings have been held every 6 months. Throughout the proceedings, Jose's permanency objective has been independent living and Luis' permanency objective has been guardianship.
In approximately 2006, Jose and Luis' mother was deported to Guatemala after being arrested for an unknown offense. At the time of their mother's deportation, Jose was living in a group home and Luis was living in a foster home after living with his older sister.
On May 11, 2007, DHHS filed motions, in each of the three cases, for an order regarding the minors' eligibility for special immigrant juvenile status,
for the reason that the juvenile intends to apply to the U.S. Bureau of Citizenship and Immigration Services (CIS) for a Special Immigrant Juvenile Visa and adjustment of status to permanent resident, and as a part of that application process, the juvenile must show that he meets the eligibility requirements, to wit:
1. The juvenile must have been declared dependent on a U.S. juvenile court or whom the court has committed to or placed under the custody of a state agency or department;
2. The juvenile must have been deemed eligible for long-term foster care;
3. The juvenile is so eligible due to abuse, neglect or abandonment;
4. It must have been determined in judicial or administrative proceedings that it is not in the juvenile's best interest to be returned to his or his parents' country of nationality or last habitual residence;
5. The juvenile must be under the jurisdiction of the juvenile court;
6. The juvenile must be unmarried;
7. The juvenile must be under the age of 21.
At a hearing on July 10, 2007, DHHS argued that Jose and Luis were attempting to submit applications to federal citizenship and immigration services for permanent status and that it was necessary for the court to make findings for special immigrant status in order to complete that process. Specifically, DHHS argued that Jose and Luis had been abandoned as a result of their mother's deportation back to Guatemala.
On July 23, 2007, the court, in an order regarding the minors' eligibility for special immigrant juvenile status, found that the juveniles were committed to DHHS and remained under the court's jurisdiction, eligible for long-term foster care; that it was not in the best interests of the juveniles to be returned to their parents' country of nationality; and that the findings were made due to the abuse, neglect, or abandonment of the juveniles.
At a review disposition hearing on March 25, 2008, the county court continued the hearing and sua sponte ordered a consolidated hearing to "determine whether the orders entered by this Court in July of 2007 regarding the minors' eligibility for special immigrant juvenile status should be vacated." At the April 22, 2008, hearing, Jose and Luis both testified.
Jose testified that he lives with a foster family and attends high school in Grand Island. Jose testified that he was in the 11th grade and was in the process of "testing out" for a diploma. Jose explained that he would be finished with school in a few weeks but would not receive his diploma until May 2009. Jose's foster mother explained that he was completing his GED program, but would receive a diploma from the high school in 2009. Jose testified that he was employed part time at a fast-food restaurant through a minor's work permit *652 and explained that he planned on eventually enlisting with the Marines or attending community college.
Jose described that he was dealing with depression and posttraumatic stress disorder. Jose stated that the posttraumatic stress disorder stemmed from his dreams recalling his father's abuse of his mother and from witnessing "[m]urders and dead bodies" in Guatemala. Jose participates in weekly therapy and takes medication for those problems. Jose explained that if he were forced back to Guatemala, he does not know how he and Luis would survive. Jose described his two uncles, who live in Guatemala and abuse members of the family, and how he would not feel safe because there is basically "no law" to protect him and Luis. Jose explained that he did not know where in Guatemala his mother was living, because she had been living with his grandmother until the grandmother was placed in the hospital after being beaten by his uncles. When questioned by the court, Jose testified that when his mother was being deported, DHHS thought it was best if he did not return to Guatemala with his mother and he did not know why she left him in the United States.
Jose's foster mother testified that Jose had lived with her family twice, once for about a year in 2005 to 2006 and again since March 2007. She testified that in the past year Jose had been with them, he had had no contact with his mother. Jose's foster mother described how Jose had shared with her details about living in Guatemala, such as surviving amongst gangs, shootings, and death, and how Jose and his siblings were left to fend for themselves. She testified that she would be willing to provide "[l]ong-term foster care, guardianship" to Jose if he were to stay in the United States.
Luis also testified at the hearing. Luis testified that he lives in a foster home in Grand Island and was in the ninth grade at a Grand Island high school. Luis testified that he was involved in track and was getting "A's and B's and some C's" in school. Luis explained that if he stayed in the United States, he wanted to try out for cross-country in high school and then, after high school, to become a welder and enlist in the Army. Luis testified that at the time his mother was involved in deportation proceedings, he was living with a foster family after living with his sister. Luis explained that the immigration judge gave him and his mother the choice for Luis to return to Guatemala or stay in the United States. Luis stated, "It was 50/50. She told me she couldn't take care of me and II should stay here. `Cause she canshe can barely take care of her own stuff." Both juveniles testified that they had had little contact with their mother in the last 2 years, apart from her calling to ask for money. Luis described trying to forget about Guatemala because it was a "bad time." Luis testified that his family "didn't really have a home," because they were always moving from place to place with different relatives. Luis also described being abused by his mother with a belt and the abuse inflicted by his father, in Guatemala, with a belt and/or open hand. Luis testified that he participates in counseling for anger and depression and is taking medication for "ADHD."
Luis' foster parent testified that Luis had been placed with her family for about 1½ years. She testified that when Luis was first placed with her family, he was very restless and depressed, but has since improved and was doing very well in school. She testified that at first, Luis was very restless because he was worried about being sent back to Guatemala, fearing that he would have to live in the streets or be killed. She described Luis' telling her that he had roamed the streets *653 in Guatemala and that he had seen murders occur and dead bodies. She opined that Luis would be better off living in the United States, because she did not think that there was any family in Guatemala who would be able to protect the boys. She explained that Luis' recent involvement in sports had really helped him and that her family was willing to continue to have Luis in their home, even if it were to include a guardianship.
Carissa Cemper, the DHHS foster care caseworker for both Jose and Luis, testified that Jose and Luis were currently in deportation court with an appeal. Cemper testified that if the county court were to withdraw the special findings for the boys, they would have to start the immigration process over and file for asylum. Cemper further testified that the foster placement of Jose and Luis had been successful and that placement with OJS was still appropriate because of Jose's ongoing problems at school.
In a June 12, 2008, journal entry, the court stated:
In July of 2007, this Court signed a[n] "order regarding minor's eligibility for special immigrant juvenile status" following a hearing at which no evidence was offered. In each case the Court found it was not in the best interest of the juvenile to be returned to his country of origin because of "abuse, neglect, or abandonment of the juvenile." The purpose of this hearing is to determine whether or not that finding was in error.
At the time of the hearing, the evidence indicated the juveniles were brought into this country illegally by their mother sometime in 2001. From the record, it is apparent the children were here with their mother at least until a review hearing on December 15, 2005. After that date, there is no further record of appearance by their mother. Apparently, at some point, she also ran afoul of the law and was deported back to Guatemala. Luis testified when his mother was deported they were given the opportunity to return to Guatemala with their mother or stay here in the United States in the custody of [DHHS]. Both juveniles elected to stay here in the United States.
At the time of the hearing, the juveniles described their living conditions in their home country prior to their arrival in the United States. Both [the juveniles' attorney] and [the attorney representing DHHS] argued persuasively it is in the best interests of the juveniles that they remain in this country. The Court is convinced that is true. However, the Court is equally convinced there are, in all probability, tens if not hundreds of thousands of people who are here illegally or who would like to come to the United States because they would be better off in this country. In addition, the record is devoid of any credible evidence that their mother abused, neglected, or abandoned the juveniles. First of all, the mother brought them here illegally presumably for a better life. Secondly, a conscious decision was made by this family to leave the children in the care and custody of [OJS] when the mother was deported. It is incongruous for the guardian ad litem or [DHHS] to argue the mother abused and neglected these children by leaving them here in the United States and at the same time argue that by doing so, they were being afforded a better life with greater opportunity.
For all the foregoing reasons the Court finds that the orders previously entered by this Court "regarding minor's eligibility for special immigrant juvenile status" should be and the same hereby are vacated.
*654 Jose and Luis have timely appealed, and the appellee has waived submission of a brief and argument in the appeal.

ASSIGNMENT OF ERROR
Jose and Luis assign, rephrased and consolidated, that the county court erred in sua sponte vacating its July 23, 2007, order due to a lack of evidence of abuse, neglect, or abandonment of the juveniles by their mother.

STANDARD OF REVIEW
[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008); In re Interest of Jeffrey K., 273 Neb. 239, 728 N.W.2d 606 (2007).

ANALYSIS

Jurisdiction.
[2,3] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. In re Interest of Brittany C. et al., 13 Neb.App. 411, 693 N.W.2d 592 (2005). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. Id.
[4,5] The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. Neb.Rev.Stat. § 25-1902 (Reissue 2008). A proceeding before a juvenile court is a "special proceeding" for appellate purposes. In re Interest of Walter W., 274 Neb. 859, 744 N.W.2d 55 (2008).
[6,7] Since this case is a special proceeding, the analysis next requires an inquiry into whether the county court's order vacating the July 23, 2007, order, that Jose and Luis were eligible for special immigrant juvenile status, affects a substantial right. For purposes of determining whether an order affects a substantial right, such that an appeal can be taken from the order, a "substantial right" is an essential legal right, not a mere technical right; a substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which an appeal is taken. State v. Jackson, 15 Neb.App. 523, 730 N.W.2d 827 (2007).
The Immigration and Nationality Act § 101(a)(27)(J), 8 U.S.C. § 1101(a)(27)(J) (2006); 8 C.F.R. § 204.11 (2008), gives undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States. Prior to the June 12, 2008, order, Jose and Luis were eligible and had applied for a valid federal application for special immigrant juvenile status. In this specific case, without the order of eligibility, including the required findings from the state court, Jose and Luis would be barred from proceeding in the federal system with a valid application for special immigrant juvenile status and would face deportation to Guatemala. The order vacating that eligibility determination effectively terminates the application for legal permanent residence, clearly affecting a substantial right of both Jose and *655 Luis. Therefore, we determine that the June 12, 2008, journal entry vacating the July 23, 2007, order is a final, appealable order properly before this court for appellate review.

June 12, 2008, Special Immigrant Juvenile Status Determination.
Since we have determined that the order vacating the eligibility for special immigrant status is a final, appealable order, we can now turn to Jose and Luis' assignments of error. Jose and Luis assign that the county court erred in sua sponte finding that they were not abused, neglected, or abandoned by their mother and vacating the July 23, 2007, order.
[8] First we address the contention by Jose and Luis that the county court was without power to vacate its July 23, 2007, findings. In accordance with Neb.Rev. Stat. § 43-2,106.02 (Reissue 2008), the juvenile court or county court sitting as the juvenile court "shall have the power to vacate or modify its own judgments or orders during or after the term at which such judgments or orders were made in the same manner as provided for actions filed in the district court." Thus, we find this assignment of error is without merit.
[9] Next, we address Jose and Luis' argument that the county court erred in finding there was no evidence of abuse, neglect, or abandonment. Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. In re Interest of Tyler F., 276 Neb. 527, 755 N.W.2d 360 (2008); In re Interest of Jeffrey K., 273 Neb. 239, 728 N.W.2d 606 (2007).
In order to qualify for an application for special immigrant juvenile status, a finding by the state court involved is required determining that a special immigrant is:
an immigrant who is present in the United States
(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;
(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence[.]
8 U.S.C. § 1101(a)(27)(J). The eligibility requirements for special immigrant status for certain aliens declared dependent on a juvenile court are that the alien
(1) Is under twenty-one years of age;
(2) Is unmarried;
(3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court;
(4) Has been deemed eligible by the juvenile court for long-term foster care;
(5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and
(6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual *656 residence of the beneficiary or his or her parent or parents[.]
8 C.F.R. § 204.11(c).
As previously discussed, on July 23, 2007, the county court made findings of fact that Jose and Luis met the eligibility requirements necessary for special immigrant juvenile status and, then, in a June 12, 2008, journal entry, the county court determined that "the record is devoid of any credible evidence that their mother abused, neglected, or abandoned the juveniles" and that "a conscious decision was made by this family to leave the children in the care and custody of [OJS] when the mother was deported."
We have carefully undertaken a de novo review of the testimony and the record in this case and are required to reach a conclusion independent of the court's findings. See, In re Interest of Tyler F., supra; In re Interest of Jeffrey K., supra. We find that the record contains significant evidence that both Jose and Luis met the requirements necessary for a finding of eligibility for special immigrants, specifically, that they had been abused, neglected, and/or abandoned. There was testimony of both Luis and Jose that both parents had inflicted physical abuse, hitting them with a belt and hitting them with an open hand across the back of the head. The boys testified that their mother failed to take care of them and could barely take care of herself. Jose testified that, when he was given a choice to return with his mother to Guatemala or stay in the United States, DHHS thought it was best for him to stay. Luis testified that the choice was "50/50" and that his mother told him to stay because she could not take care of him.
Clearly, there is evidence in the record to substantiate a finding that the boys had been abused, neglected, and/or abandoned for purposes of their eligibility for special immigrant juvenile status, and we find that the county court erred in vacating the July 23, 2007, order. We, therefore, reverse the decision of the county court and remand with directions to reinstate the July 23, 2007, order approving the minors' eligibility for special immigrant juvenile status.

CONCLUSION
Upon our de novo review of the record, we find that the court erred in vacating the order regarding the minors' eligibility for special immigrant juvenile status. As such, we reverse the decision of the county court and remand the cause to the county court with directions.
REVERSED AND REMANDED WITH DIRECTIONS.