OPINION OF THE COURT
John M. Hunt, J.
I
Wallace C., a naturalized citizen of the United States, has filed a petition in accordance with Domestic Relations Law § 115, seeking approval of his proposed adoption of his great-nephew, Jason K., who was born in Seoul, South Korea to his niece and her husband on October 7, 1997.
The following facts appear to be uncontroverted. Jason K. is the 15-year-old son of C.J.W (age 38) and E.H.K. (age 43), both of whom are citizens and residents of the Republic of Korea. It appears that Jason’s parents have been divorced and they live separately in Korea. On August 25, 2008 Jason obtained a passport from the Ministry of Foreign Affairs and Trade of the Republic of Korea,[2]
[3]and on February 24, 2009 the United States Citizenship and Immigration Services (USCIS) post at the embassy in Seoul issued a class F-l student visa to Jason authorizing him to enter the United States temporarily as a nonimmigrant for the purpose of pursuing his education (8 USC § 1101 [a] [15] [F] [i]; 8 CFR 214.1 [a] [2]).[3]
Jason first entered the United States on or about February 25, 2009, and he appears to have departed and then returned to the United States on August 31, 2010. At that time, he assumed residence in the household of his maternal great-uncle, Wallace C.,[4] in Queens County, and according to the report of investigation provided to the court by a licensed master social worker, *887 Jason first attended “a public middle school in Queens.”[5] In the fall of 2012 Jason began 10th grade at a private boarding school in New Jersey, although he returns to the home of his great-uncle on weekends and for holidays and school recess periods.
Jason and Wallace have developed a close relationship, and Mr. C. has assumed the role of grandfather to Jason. Mr. C., who is divorced and is seeking to adopt as a single person (Domestic Relations Law § 110), has executed an agreement of adoption signifying his willingness to become Jason’s legal parent and to treat him as his own child (Domestic Relations Law § 115 [4]; see Matter of Baby Boy C., 84 NY2d 91, 101 [1994]). Similarly, Jason, who lias expressed his desire to remain in the United States for the foreseeable future and through his completion of college, has executed a consent signifying his agreement with his proposed adoption by his great-uncle (Domestic Relations Law § 111 [1] [a]). Jason’s biological parents have likewise executed extrajudicial consents to the proposed adoption (Domestic Relations Law § 115-b [3]),[6] notwithstanding that the granting of the proposed adoption by this court will result in a permanent termination of their legal status as Jason’s parents (Domestic Relations Law § 117 [1] [a]; Matter of Peter Z. v Nilda C., 46 AD3d 696, 696-697 [2007]; Matter of Michelle N. v Sandra N., 79 AD3d 753, [2010], lv denied 16 NY3d 705 [2011]).[7]
Prior to the submission of the adoption petition to the Clerk of the Family Court on June 26, 2013,[8] Mr. C. had filed a petition on January 24, 2013 seeking an order of guardianship of the person of Jason and requesting that letters of guardianship be issued to him (Family Ct Act § 661; SCPA 1701, 1703), and the petition was referred to Judge Nicolette M. Pach, sitting as a judicial hearing officer. On June 24, 2013, Judge Pach issued a temporary order appointing Mr. C. as guardian of the person of Jason. Thereafter, by order dated September 17, 2013, Mr. C. *888 was appointed as guardian and letters of guardianship of Jason were issued to Mr. C. based upon Judge Pach’s determination that the appointment of Mr. C. was in the best interests of his great-nephew (SCPA 1707 [1]; see Matter of Diego F. [Magna V.], 84 AD3d 1373 [2011]; Matter of Bianca B. [Carrie A.], 97 AD3d 742 [2012]; Matter of Deven Meza F. [Maria F. — Oneyda M], 108 AD3d 701, 702 [2013]).
The issuance of an order of guardianship or an order of adoption for a minor child residing in the United States by a juvenile court may provide a basis for the juvenile court to make the special findings necessary to submit an application to USCIS for special immigrant juvenile (SIJ) status pursuant to 8 USC § 1101 (a) (27) (J) (see Matter of Emma M., 74 AD3d 968, 970 [2010] [adoption]; Matter of Jisun L. v Young Sun P., 75 AD3d 510, 512 [2010] [guardianship]; Matter of Sing W.C. [Sing Y.C.— Wai M.C.], 83 AD3d 84, 86 [2011] [guardianship]; In re C.G.H., 75 A3d 166 [DC Ct App 2013] [adoption]), although guardianship of an alien minor may be granted independently of any application for SIJ status (Matter of Luis A.-S., 33 AD3d 793, 793-794 [2006]).
Here, petitioner’s attorney has informed the court that there is no intention to seek SIJ status for Jason, and it would appear that no such application can be filed as there was no request that Judge Pach enter the special findings which would establish that Jason has been abused, neglected, or abandoned by his biological parents. In the absence of special findings made by a state juvenile court, the USCIS is precluded from considering an application for SIJ status (see Yeboah v United States Dept. of Justice, 345 F3d 216, 221 [3d Cir 2003]; Garcia v Holder, 659 F3d 1261, 1271 [9th Cir 2011]; Matter of Trudy-Ann W. v Joan W., 73 AD3d 793 [2010]; Matter of Mohamed B., 83 AD3d 829, 831 [2011]; Matter of Hei Ting C., 109 AD3d 100, 102 [2013]; Matter of Francisco M.-G. v Marcelina M.-G., 100 AD3d 900, 901-902 [2012]; Matter of Nirmal S. v Rajinder K., 101 AD3d 1130, 1131 [2012]; Matter of Mario S., 38 Misc 3d 444 [2012]; In re J.J.X.C., 318 Ga App 420, 424, 734 SE2d 120, 123 [2012]; E.C.D. v P.D.R.D., 114 So 3d 33, 35 [Ala Ct Civ App 2012]).
It is also noted that the reported cases which address SIJ status all involve “[a]n unaccompanied child [who] is subject to deportation unless granted permission to stay in the United States” (In re Y.M., 207 Cal App 4th 892, 914-915, 144 Cal Rptr 3d 54, 71-72 [4th Dist 2012]; see also In re Interest of Luis G., 17 Neb App 377, 385, 764 NW2d 648, 654 [2009] [SIJ status ap-
*889 plies to “undocumented children”]; Matter of Alamgir A., 81 AD3d 937, 938 [2011]; Matter of Denys O.H. v Vilma A.G., 108 AD3d 711, 712 [2013]), and not a minor such as Jason who is lawfully present in the United States on an F-l student visa.[9]
A
While the social worker’s investigation report and documents submitted to this court raise no obvious concerns about Mr. C.’s suitability as a prospective adoptive parent, and there is nothing in particular which indicates that the proposed adoption would be contrary to Jason’s best interests (Domestic Relations Law § 114 [1]), the court had concerns with the child’s status as a nonimmigrant student and its possible impact on the proposed adoption. The court therefore through its staff requested that counsel for Mr. C. submit further information relating to Jason’s legal status and whether it presents any obstacle to the granting of the petition for adoption. In particular, the attorney, Mr. Shin, was requested to provide the court with “confirmation from USCIS of the Family Court’s jurisdiction to proceed [with the adoption] in conformance with federal law.”
Several weeks later the court received a written response from petitioner’s counsel. In his letter to the court, Mr. Shin states that there has been and would be no application made for special findings under 8 USC § 1101 (a) (27) (J), and therefore there will be no request made to USCIS by Jason for SIJ status. Instead of providing the court with legal authority from the USCIS, counsel proceeded to recite the “three distinct ways an adopted child may be considered for immigration purposes, to be the child of his or her adoptive parent(s),” namely, Immigration and Nationality Act (INA) § 101 (b) (1) (E) (8 USC § 1101) “which applies to adopted children if certain requirements are met, including where the parent or parents have two years of legal custody and joint residence”; INA § 101 (b) (1) (F) (8 USC § 1101) “which applies to children coming to the United States as ‘orphans’ from countries that have not adopted the Hague Adoption Convention, if they have been adopted, or are coming to the United States to be adopted, by a U.S. citizen(s)”; and *890 INA § 101 (b) (1) (G) (8 USC § 1101) “which applies to children coming to the United States who have been adopted, or are coming to the United States to be adopted, by U.S. citizen(s) under the Convention on Protection and Co-Operation in Respect of Inter-Country Adoption.”
Counsel then states that Jason “does not fit in above (B) orphan case and [does] not fit in above (C) Hague Convention Case . . . but [Jason] [does] fit in the above 8 USC § 101 (b) (1) (B) case.” Counsel further writes that while this case is not one for the issuance of a pre-adoption certificate pursuant to Domestic Relations Law § 115-a, “this case has satisfied with all requirements [sic] for the New York Domestic Relations Law § 115-d for issuing of Certification as qualified Adoptive Parent.” Finally, counsel advised the court that Jason’s 16th birthday is on October 7, 2013 and counsel requests that the court “issue immediately a Certification as Qualified Adoptive Parent under New York Domestic [Relations] Law § 115-d”; and “[t]o set up a hearing date for this adoption case before October 3, 2013.”
II
Petitioner has failed to respond to the court’s request that it be provided with confirmation from USCIS that Jason may be lawfully adopted by Mr. C. given the fact that the child is admitted to the United States as a nonimmigrant on an F-l student visa. Because there is no other relief which is presently available under the adoption statute or the Family Court Act, the court is constrained to dismiss this petition which appears to be an inartfully veiled attempt to utilize this state’s adoption statute to circumvent the immigration laws of the United States.[10]
An adoption proceeding commenced in the Family or Surrogate’s Court “shall constitute a judicial proceeding” (Domestic Relations Law § 110). An order approving an adoption petition is not a ministerial act, nor is such an order available merely for the asking (see Matter of Robert Paul P., 63 NY2d 233 [1984]; Matter of Tia G. [Theresa G. — Christopher G.], 70 AD3d 692, 693 [2010], lv denied 15 NY3d 701, 702 [2010]; Matter of *891 Male Infant L., 282 AD2d 534, 534-535 [2001]; Matter of D.S., 160 Misc 2d 331, 332 [Sur Ct, Ulster County 1994]; see also In re Marriage of Mancine, 2012 Ill App [1st] 111138, 965 NE2d 592, 600, 358 Ill Dec 521, 529 [1st Dist 2012], lv denied judgment vacated 372 Ill Dec 462, 992 NE2d 1 [2013]).
Adoptions are governed by state law, yet some adoptions, such as the one before this court, involve immigration issues. This requires that particular care be taken to ensure that the proposed adoption is in conformance with the Immigration and Nationality Act. The “[p]ower to regulate immigration is unquestionably exclusively a federal power” (De Canas v Bica, 424 US 351, 354 [1976]; see also Chamber of Commerce of United States of America v Whiting, 563 US —, —, 131 S Ct 1968, 1974 [2011]; Balbuena v IDR Realty LLC, 6 NY3d 338, 351 [2006]; Rohit v Holder, 670 F3d 1085, 1087 [9th Cir 2012]). Given this “preeminent” (Toll v Moreno, 458 US 1, 10 [1982]), “broad [and] undoubted power over the subject of immigration and the status of aliens” (Arizona v United States, 567 US —, —, 132 S Ct 2492, 2498 [2012]), the usual principles of preemption require that states adhere to federal immigration law (Arizona v United States, 567 US at —, 132 S Ct at 2505; Balbuena, 6 NY3d at 356-357; Keller v City of Fremont, 719 F3d 931, 939-940 [8th Cir 2013]; Fonseca v Fong, 167 Cal App 4th 922, 930, 84 Cal Rptr 3d 567, 574 [1st Dist 2008]). Accordingly, state adoption statutes cannot be utilized in derogation of the Immigration and Nationality Act of the United States.
While the standard for granting an adoption petition under New York law is the best interests of the child (Domestic Relations Law § 114 [1]; Matter of Donald U., 105 AD2d 875 [1984], lv dismissed 64 NY2d 603 [1985]; Matter of Alicia TT., 294 AD2d 642, 643 [2002]; Matter of Pierre, 12 AD3d 506, 607 [2004]), the state adoption statute must be applied in a manner consistent with federal immigration law, and a child’s best interests are hardly served by the issuance of adoption orders which conflict with federal law.
Federal law classifies aliens as immigrants or nonimmigrants (Azizi v Thornburgh, 908 F2d 1130, 1133 [2d Cir 1990]; Elie v Holder, 443 Fed Appx 635, 637 [2d Cir 2011]), and these individuals may be subject to further classification into specific subclasses (e.g. 8 CFR 214.1 [a] [1]). Insofar as relevant here, Jason was admitted into the United States as a student on an F-l visa. An alien admitted into the United States on an F-l visa is defined as
*892 “an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study” (8 USC § 1101 [a] [15] [F] [i] [emphasis added]; see also Elkins v Moreno, 435 US 647, 665 [1978]; Richard D. Steel, Steel on Immigration Law § 3:12 [2013 ed]).
It has been observed that
“[b]y including restrictions on intent in the definition of some nonimmigrant classes, Congress must have meant aliens to be barred from these classes if their real purpose in coming to the United States was to immigrate permanently. Moreover, since a nonimmigrant alien who does not maintain the conditions attached to his status can be deported, it is also clear that Congress intended that, in the absence of an adjustment of status . . . nonimmigrants in restricted classes who sought to establish domicile would be deported” (Elkins, 435 US at 665-666 [citation omitted]).
In that regard, 8 USC § 1227 provides that “[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable” (8 USC § 1227 [a] [1] [C] [i]).
While this court has no involvement in rendering any determination as to Jason’s legal status in the United States or any adjustment which may be granted by immigration authorities, given the information which was provided to the court, petitioner’s counsel was directed to provide the court with legal authority for the proposition that it may proceed to consider the approval of the adoption of a nonimmigrant alien admitted on an F-l student visa by a United States citizen. Counsel for the petitioner has failed to do so.
To the extent that counsel for petitioner contends that this court should grant the petition for adoption so that Mr. C. can petition for permanent resident status and then for citizenship on behalf of Jason as the adopted child of a United States citizen pursuant to 8 USC § 1101 (b) (1) (E), this fails to address the court’s initial inquiry — whether an application to adopt a child who is present in the United States under a nonimmigrant *893 student visa would result in a violation of 8 USC § 1227 (a) (1) (C) (i) or any other provision of the immigration statute. While petitioner’s objective is to obtain an order of adoption so that an 1-130 petition can be filed for Jason as the adopted child of a United States citizen, there has been no response to the court’s simple inquiry as to whether a nonimmigrant alien child admitted on an F-l student visa is adoptable in the first instance consistent with the Immigration and Nationality Act.
At this juncture the court cannot proceed upon this adoption petition. The court makes no final determination as to whether the proposed adoption should be approved, although the court will revisit the issue upon submission of confirmation from the USCIS that it is permissible to proceed with an adoption of a nonimmigrant alien child admitted to the United States on an F-l student visa. The order of guardianship previously issued by the Family Court under docket No. G-xxxx/13 is unaffected by this order.
The court further observes that the petitioner’s request that he be granted an order certifying him as a “qualified adoptive parent” pursuant to Domestic Relations Law § 115-d is inappropriate and cannot be granted. The statute clearly applies prior to the commencement of a private-placement adoption proceeding and prior to any transfer of the physical custody of the prospective adoptive child (Domestic Relations Law § 115 [1] [b]).[11] Here, Jason is already in the custody of the proposed adoptive parent and the proposed adoptive parent has previously been appointed as the guardian of Jason’s person by another judge of this very court in a separate proceeding. Thus, certification as a qualified adoptive parent is unnecessary in this situation (*Matter of Joanna K., 33 Misc 3d 486 [2011]; see also Matter of Eliyahu [Nina Y. — Jennifer B.], 104 AD3d 488, 489 [2013]).
Accordingly, it is hereby ordered, that the petition is dismissed without prejudice.

. The copy of the passport provided to this court reflects that it expired on August 25, 2013.

. The visa has an expiration date of February 22, 2014, but because the visa is tied to Jason’s status as a student, no extension is required so long as he remains enrolled in a course of study which will lead to the achievement of his educational objective (8 CFR 214.2 [¶] [7] [i]).

. Wallace C. is the brother of Jason’s maternal grandfather.

. The visa issued by the USCIS in Seoul states that Jason was to attend parochial school in the Archdiocese of Newark, New Jersey. There are significant limitations placed on the attendance of alien students present in the United States on F-l visas at publicly funded educational institutions (8 USC § 1184 [m] [1], [2]; Lee v Mukasey, 527 F3d 1103, 1108-1109 [10th Cir 2008]).

. The consent forms are written in English and they were executed before a duly authorized notary public of the Republic of Korea.

. “The INA prevents a natural parent from receiving any immigration privilege through [the adoptive] child. Adoption severs the legal relationship, for immigration purposes, between an adopted child and her [or his] natural parents” (Young v Reno, 114 F3d 879, 883 [9th Cir 1997]).

. The adoption file was first referred to this court sometime in July or August of 2013.

. In any event, it appears that a minor’s application for SIJ status in incompatible with the minor’s presence in the United States as a non-immigrant student. The regulations of the U.S. Department of State provide that an alien may be granted a student visa only where a consular officer determines that: (i) the alien has been accepted for attendance at an academic institution; (ii) the alien has sufficient financial resources for his or her support while in the United States; and (iii) the alien intends to depart the United States upon the termination of student status (22 CFR 41.61 [b]).

. Counsel’s letter makes clear that Mr. C.’s objective is to file a petition for Jason to become a permanent resident as the adopted child of a United States citizen under 8 USC § 1101 (b) (1) (E). However, it is unclear whether the federal immigration authorities will recognize adoptions which are procured solely to facilitate the entry of the adopted child into the United States (see Matter of Marquez, 20 I & N Dec 160, 164 [Bd Immigration App 1990]).

. Domestic Relations Law § 115 (1) (b) states that “[a] person or persons seeking to commence a private-placement adoption shall, prior to the submission of a petition for such adoption and prior to any transfer of physical custody of an adoptive child, be certified as a qualified adoptive parent or parents” (emphasis added).