# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. F. O. C., Minor.

FOR PUBLICATION
May 4, 2017
9:00 a.m.

No. 334870
Wayne Circuit Court
Family Division
LC No. 16-000209-AY

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Petitioners, JAS and AEO, appeal as of right an order denying their motion for special findings on the issue of "special immigrant juvenile" (SIJ) status for the minor child, LFOC, in this stepparent adoption case. We reverse the trial court's determination that it lacked authority to make such findings and remand for consideration of petitioners' motion on the merits.

LFOC is an undocumented juvenile immigrant from Honduras. AEO, the mother of LFOC, is married to JAS; they live in Michigan. LFOC's biological father is CCO. JAS and AEO filed a petition for stepparent adoption of LFOC by JAS. Following a hearing, the trial court terminated CCO's parental rights to LFOC, granted the request for a stepparent adoption, and placed LFOC in petitioners' home. Petitioners then filed a motion for special findings on the issue of LFOC's SIJ status. In particular, petitioners asked the trial court to make the following findings:

> 1. That [LFOC] has been declared dependent upon a juvenile court.

> 2. That reunification with one or both of [LFOC's] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

> 3. That it is not in [LFOC's] best interest to be returned to his country of origin; and

> 4. Any other relief this Court deems just and proper.

Petitioners sought these findings so that LFOC could then submit a request to the United States Citizenship and Immigration Services (USCIS), a division of the United States Department of Homeland Security (USDHS), for SIJ status pursuant to 8 USC 1101(a)(27)(J). The trial court

denied the request, stating, in relevant part, that it lacked authority to issue the requested findings.

On appeal, petitioners argue that the trial court erred in concluding that it lacked authority to make the requested factual findings pertinent to the issue of SIJ status. We agree.

"Questions of law, including statutory interpretation, are reviewed de novo on appeal." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013). This standard of review applies to the interpretation of federal statutes and regulations:

> Statutory interpretation is a question of law we review de novo, as is the interpretation of administrative regulations. This standard applies to the interpretation of federal statutes and regulations, though reasonable administrative interpretations of regulations operating as statutory gap-fillers are entitled to deference. Clear and unambiguous statutory language is given its plain meaning, and is enforced as written. [*In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 698; 736 NW2d 594 (2007) (quotation marks and citations omitted).]

Jurisdictional issues are also reviewed de novo. *Pontiac Food Ctr v Dep't of Community Health*, 282 Mich App 331, 335; 766 NW2d 42 (2008). A trial court's factual findings are reviewed for clear error. See MCR 2.613(C); *In re ALZ*, 247 Mich App 264, 271; 636 NW2d 284 (2001). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake was made." *In re ALZ*, 247 Mich App at 271-272.

At the hearing on the motion for special findings on the issue of SIJ status, the trial court initially noted that "classification based upon alienage is reserved solely for the federal government, so I'm not supposed to pay attention to that." The trial court went on to recognize that "[h]ere the request I have asks me to do something that's at least slightly different from that." The trial court then described the findings that it was being asked to make and concluded that it had difficulty making those findings with what had been presented to the court. The trial court entered an order finding that the criteria for SIJ status had not been satisfied. At the hearing on petitioners' motion for reconsideration, the trial court again stated that only the federal government may classify on the basis of alienage and stated that the court lacked the "power" or "authority" to make the requested decisions. Given that the trial court stated that it lacked authority to make findings on the issue of SIJ status, we agree with petitioners that it is necessary to address whether the trial court has such authority.

"The Immigration and Nationality Act of 1990 (Act) first established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States." *In re*

*Estate of Nina L ex rel Howerton*, 2015 Ill App 152223; 397 Ill Dec 279, 282-283; 41 NE3d 930 (2015).[1]  8 USC 1101(a)(27)(J) defines a "special immigrant" to include:

> an immigrant who is present in the United States –
>
> (*i*) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (*ii*) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (*iii*) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that –
>
> (*I*) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
>
> (*II*) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

"Juvenile court means a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 CFR 204.11(a) (2017). Following the issuance of special findings by a juvenile court, a juvenile may file a petition with the USCIS for SIJ classification.  See 8 CFR 204.11(b) (2017); *Recinos v Escobar*, 473 Mass 734, 735; 46 NE3d 60 (2016); *Matter of Diaz v Munoz*, 118 AD3d 989; 989 NYS2d 52 (2014).  8 CFR 204.11(c) (2017) provides:

> (c) Eligibility.  An alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the Act if the alien:

---

[1] "When interpreting federal statutes, we may look to decisions from other jurisdictions for guidance." *In re Lampart*, 306 Mich App 226, 235 n 6; 856 NW2d 192 (2014).  Although not binding, the decisions of courts from other states may be considered as persuasive authority. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559; 705 NW2d 365 (2005).  Because there is no Michigan case law addressing the issues here, it is necessary to consider authorities from other jurisdictions.

(1) Is under twenty-one years of age;

(2) Is unmarried;

(3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court;

(4) Has been deemed eligible by the juvenile court for long-term foster care;

(5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and

(6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents; or

(7) On November 29, 1990, met all the eligibility requirements for special immigrant juvenile status in paragraphs (c)(1) through (c)(6) of this section, and for whom a petition for classification as a special immigrant juvenile is filed on Form I–360 before June 1, 1994.

Also, as explained in 8 CFR 204.11(a):

Eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option. A child who is eligible for long-term foster care will normally be expected to remain in foster care until reaching the age of majority, unless the child is adopted or placed in a guardianship situation. For the purposes of establishing and maintaining eligibility for classification as a special immigrant juvenile, a child who has been adopted or placed in guardianship situation after having been found dependent upon a juvenile court in the United States will continue to be considered to be eligible for long-term foster care.

As stated in *Howerton*, 397 Ill Dec at 283:

The requirement of eligibility for long-term foster care was modified in 2008 and, as presently formulated, the statute now requires that a state or juvenile court place the minor in the custody of either (i) a state agency or department or (ii) an individual or entity appointed by the court and that the dependency determination be due to a finding that reunification with one or both parents is not viable due to abuse, neglect or abandonment. 8 USC 1101(a)(27)(J)(*i*). Separately, the court

must also find that return to the minor's country of nationality is not in the minor's best interest. 8 USC 1101(a)(27)(J)(*ii*).

See also *HSP v JK*, 223 NJ 196, 209; 121 A3d 849 (2015) (noting that the 2008 amendment of the federal statute "liberalized the requirements for SIJ status by eliminating the requirement that the child be eligible for long-term foster care.").

Also, the "USCIS, the agency charged with administering the Act, including applications for SIJ status, has taken the position that abuse, neglect or abandonment by one parent [as opposed to both parents] is sufficient for purposes of SIJ predicate findings." *Howerton*, 397 Ill Dec at 286. See also *id*. at 285-287 (noting a split of authority on the issue but concluding that abuse, neglect, or abandonment by only one parent is sufficient to support the predicate finding).

In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2017) afford "undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States." *In the Interest of Luis G*, 17 Neb App 377, 385; 764 NW2d 648 (2009); see also *In re JJXC*, 318 Ga App 420, 424; 734 SE2d 120 (2012) ("Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for 'special immigrant juvenile' (SIJ) status."). "Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government, and, as shown, the child must apply to that authority." *In re JJXC*, 318 Ga App at 424-425. Predicate factual findings of the state juvenile court are used to petition for SIJ status in the federal system. See *In the Interest of Luis G*, 17 Neb App at 385; *Matter of Diaz*, 118 AD3d at 989.

> Implementing regulations require that an application for SIJ status attach an order from a state juvenile court containing the findings as set forth in the statute. Once an order containing the required findings is entered, the juvenile may apply to the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) for SIJ status. At the same time, the juvenile files an application to become a lawful permanent resident. [*Howerton*, 397 Ill Dec at 283 (citation omitted).]

"If the application is granted, the juvenile may become a lawful permanent resident who, after five years, is eligible to become a United States citizen. Denial of SIJ status renders the applicant subject to deportation." *Howerton*, 397 Ill Dec at 284 (citation omitted).

It is therefore clear that a state juvenile court has authority to issue factual findings pertinent to a juvenile's SIJ status. As explained in *In re JJXC*, 318 Ga App at 425:

> Thus, the juvenile court is charged with making the factual inquiry relevant to SIJ status when an unmarried, resident alien child is found to be dependent on the court. The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests. Accordingly, courts in other states have held that a juvenile court errs by failing to consider a request for SIJ findings. [Quotation marks and citations omitted.]

Likewise, in *HSP*, 223 NJ at 209, it was observed that "[t]he process for obtaining SIJ status is a unique hybrid procedure that directs the collaboration of state and federal systems." (Quotation marks and citations omitted.) The ultimate determination whether to grant SIJ status to a juvenile "rests squarely with the federal government. Congress chose to rely on state courts to make initial factual findings because of their special expertise in making determinations as to abuse and neglect issues, evaluating the best interest factors, and ensuring safe and appropriate custodial arrangements." *Id*. at 211 (quotation marks, brackets, and citation omitted). That is, the federal statute

> implements a two-step process in which a state court makes predicate factual findings – soundly within its traditional concern for child welfare – relative to a juvenile's eligibility. The juvenile then presents the family court's factual findings to USCIS, which engages in a much broader inquiry than state courts and makes the ultimate decision as to whether or not the juvenile's application for SIJ status should be granted. Thus, the findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states. All immigration decisions remain in the hands of USCIS, the agency charged with administering the [federal immigration statute]. [*Id*. at 212 (quotation marks and citation omitted).]

See also *Recinos*, 473 Mass at 738 (noting that the juvenile court's special findings are limited to child welfare determinations and that the juvenile court is not to engage in an immigration analysis or decision). Also, "courts around the country hear SIJ evidence in a variety of settings, including custody proceedings, adoption petitions and probate issues." *Simbaina v Bunay*, 221 Md App 440, 454; 109 A3d 191 (2015). "The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a 'juvenile court.' " *Id*. at 455.

In the present case, the trial court erred to the extent that it found that it lacked authority to make predicate factual findings pertaining to the issue of SIJ status. The trial court's expression of concern that only the federal government may classify on the basis of alienage disregarded the limited nature of the findings to be made by a state juvenile court in the SIJ context. That is, as explained above, the juvenile court's findings are limited to areas falling within the institutional competence of such courts: child welfare determinations concerning abuse, neglect, and abandonment as well as the child's best interests. *HSP*, 223 NJ at 211; *In re JJXC*, 318 Ga App at 425. The ultimate immigration decision remains with the federal government, *HSP*, 223 NJ at 212; *In re JJXC*, 318 Ga App at 424-425, and the state juvenile court is not allowed to engage in an immigration analysis or decision, *Recinos*, 473 Mass at 738.

Also, the trial court in this case qualifies as a juvenile court under the federal definition, i.e., "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 CFR 204.11(a) (2017). "When determining which court qualifies as a juvenile court under the Federal statute, it is the function of the State court and not the designation that is determinative." *Recinos*, 473 Mass at 738. For example, "[i]n Massachusetts, the Juvenile Court and the Probate and Family Court both have jurisdiction to make judicial determinations about the care and custody of juveniles despite only one court being designated as a juvenile court." *Id*. In Michigan, the family division of the

circuit court has jurisdiction over adoption cases. See MCL 600.1021(1)(b). The trial court exercised its jurisdiction in this case by terminating the parental rights of LFOC's putative father, CCO; granting a stepparent adoption to JAS, the husband of LFOC's mother, AEO; and placing LFOC in the home of JAS and AEO. Because the trial court qualifies as a juvenile court under the federal definition, it possesses authority to issue predicate factual findings pertinent to the issue of SIJ status in this case. See 8 USC 1101(a)(27)(J); 8 CFR 204.11 (2017); *HSP*, 223 NJ at 211; *In re JJXC*, 318 Ga App at 425. The trial court thus erred to the extent that it concluded that it lacked authority to issue such findings.

Because the trial court suggested that it lacked authority to issue findings pertinent to SIJ status, the proper remedy is to remand the case to the trial court to consider the request for SIJ findings on the basis of the facts and law and to make relevant findings. The trial court's reasoning is somewhat unclear and could arguably be interpreted to suggest that the trial court was declining to make the requested findings on the merits. But given the additional language used by the court suggesting that it lacked authority to issue the requested findings, we remand the case to the trial court to consider and decide the motion. Such a remedy was granted in *In re JJXC*, 318 Ga App at 425-426. The trial court on remand shall review the matter and make relevant findings in light of this Court's conclusion that the trial court has authority to make findings pertinent to the issue of SIJ status.

Amici curiae suggest that this Court should issue the requested findings itself, citing cases in which an appellate court made findings itself on the basis of the lower court record. See, e.g., *Matter of Diaz*, 118 AD3d at 991. But we conclude that the remedy of remanding the case to the trial court to review the case and to make relevant findings is more appropriate. Such a remedy is consistent with that afforded in *In re JJXC*, 318 Ga App at 426, and is more in keeping with this Court's appellate role of reviewing the factual findings of lower courts for clear error, giving due regard to the special opportunity of the trial court to assess the credibility of witnesses who appeared before it. See MCR 2.613(C); *In re ALZ*, 247 Mich App at 271-272.

Because the appropriate remedy is to remand the case to the trial court for consideration of petitioners' motion on the merits, it is unnecessary to address petitioners' arguments that the trial court erred on the merits when it refused to make the second and third requested findings. Again, to the extent that the trial court reached the merits, its findings were too cursory to permit meaningful appellate review.

We reverse the trial court's determination that it lacked authority to make factual findings pertinent to the issue of SIJ status and remand the case to the trial court to consider the request for SIJ findings on the merits and to make relevant findings. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan