2015 IL App (1st) 152223

THIRD DIVISION
September 16, 2015

No. 1-15-2223

| | | |
|---|---|---|
| *In re* ESTATE OF NINA L., a Minor, by Terry Howerton and Richard Aleong, Coguardians, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Petitioners-Appellants. | ) ) ) ) ) ) ) ) | No. 15 P 1340 Honorable Susan Kennedy Sullivan, Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1      Petitioners, Terry Howerton and Richard Aleong, were appointed by the circuit court of Cook County to act as coguardians of Nina L., a nonrelative minor who was born in Taiwan and came to this country with her mother when she was six years old. At the time the petition was filed, Nina was 17 years old; she will turn 18 on September 23, 2015. Following their appointment, petitioners filed a motion requesting the trial court to make certain findings that would enable Nina to apply for Special Immigrant Juvenile (SIJ) status, an application that, if granted, could lead to permanent resident status and, ultimately, citizenship. The court denied the motion and declined to make any findings, a ruling from which petitioners appealed.

¶ 2      On August 25, 2015, we entered an order vacating the trial court's order and, based on our *de novo* review of petitioner's brief and supporting record, made findings that (i) Nina's reunification with one or both of her parents is not viable due to abuse,

neglect or abandonment and (ii) return to Taiwan is not in Nina's best interest. We now set forth the basis for our ruling.

¶ 3                                                    BACKGROUND

¶ 4        We draw the facts from the affidavits and other materials filed in the trial court. Nina was born in Taiwan in 1997 and for the past eight years has had virtually no contact with her father, a native of Taiwan. Nina's mother, Maria L., a native of the Philippines, came to this country in 2003 on a student visa. After Maria's visa expired, Maria and Nina remained here and thus are considered undocumented immigrants and are subject to deportation.

¶ 5        Until September 2014, Nina lived with her mother, most recently in Lincolnwood, Illinois. She attends high school in the community. In September 2014, Maria left for California without making any arrangements for Nina's care and left Nina alone in their apartment.

¶ 6        Petitioners are a couple who were married in 2012. They reside with two of Howerton's nieces who came to live with them after their mother, Howerton's sister, died. Howerton has adopted the younger girl and has been appointed to act as guardian of the older girl. The older girl and Nina have been friends for several years and attend the same high school. Nina has also accompanied petitioners and the two girls on family vacations. When petitioners learned of Nina's situation shortly after her mother left, they insisted that Nina come to stay with them, and she has resided with them ever since.

¶ 7        After several months, petitioners decided to seek court appointment as Nina's guardians in order to enable them to more formally arrange for Nina's care, including placing her on their health insurance and having the authority to make decisions for her.

Petitioners initiated guardianship proceedings on March 4, 2015. Maria was initially served by publication, but after the court was advised that she had returned to Illinois and Nina had been in contact with her, petitioners were directed to provide her proper notice. Maria executed a consent to guardianship on June 18, 2015, in which she represented that she was "unable and unwilling" to care for her daughter. The notary's attestation on the consent reflects that Maria appeared in Illinois to execute it.

¶ 8      The court also appointed a guardian *ad litem* (GAL) for Nina. The GAL filed a report with the court summarizing the results of his investigation into the guardianship petition. In addition to the circumstances of Nina's situation, the GAL reported that Maria had returned from California and was now living "on the north side of Chicago." He further summarized a telephone conversation he had on July 9, 2015, with a person identifying herself as Maria. This individual confirmed that she had left Nina alone while she traveled to California and that she is "grateful" that petitioners have agreed to act as her daughter's guardians but had no prior arrangement with them to do so. She believed the guardianship was in her daughter's best interest, her consent to the guardianship was voluntary, she did not expect Nina to return to live with her, and she was unwilling to come to court.

¶ 9      According to petitioners and the GAL, none of the parties involved was aware at the outset of the possible immigration benefits to Nina resulting from the guardianship and that was not the motivation for Maria's "abandonment" of her daughter or petitioners' efforts to be named her guardians.

¶ 10    Petitioners were appointed to act as Nina's coguardians on July 14, 2015. On July 29, 2015, petitioners filed their motion seeking SIJ findings. In a supplemental report, Nina's GAL supported the motion and urged the court to make the requested findings.

¶ 11    After a hearing, the court entered its August 7, 2015 order. The order recites that petitioners requested "this Court to 'find that reunification with one or both of [Nina L.'s] parents is not viable due to abuse, neglect, or abandonment or similar basis found under state law.' " The order further recites that "[t]here has been no finding by this court that reunification of the minor is not viable" and otherwise denied the petition. The court did not address whether return to Taiwan was in Nina's best interest. Petitioners filed their notice of appeal on August 12, 2015. There is no party opposing petitioners in this court.

¶ 12                                          ANALYSIS

¶ 13    We must first address whether we have jurisdiction over this appeal. The circuit court's order denying petitioners' motion for SIJ findings is not a "final judgment" in the traditional sense. Generally, in order to be considered "final" for purposes of appeal, an order must dispose of the rights of the parties either on the entire case or on some definite and separate part of the controversy. See *Brentine v. DaimlerChrysler Corp.*, 356 Ill. App. 3d 760, 765 (2005); *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008). In most contexts, the denial of a motion does not satisfy this standard. See, *e.g.*, *Cabinet Service Tile, Inc. v. Schroeder*, 255 Ill. App. 3d 865, 868-69 (1993) (denial of motion to dismiss was not a final and appealable order); *Resurgence Financial, LLC v. Kelly*, 376 Ill. App. 3d 60, 62 (2007) (denial of summary judgment motion was not final and appealable, because " '[w]hen an order leaves a cause still pending and undecided, it is not a final order' " (quoting *Austin's Rack, Inc. v. Gordon & Glickson, P.C.*, 145 Ill. App. 3d 500,

4

502 (1986))). But at least one court considering issues pertaining to SIJ predicate findings has observed that the denial of the juvenile's motion effectively terminates the juvenile's ability to pursue this avenue of immigration relief. See *In re Interest of Luis G.*, 764 N.W.2d 648, 654-55 (Neb. Ct. App. 2009). In *Luis G.*, the trial court initially made the requested SIJ findings, but later vacated them, an order from which the minors appealed. *Id.* Concluding it had jurisdiction over the appeal, the court stated:

> "[W]ithout the order of eligibility, including the required findings from the state court, [the minors] would be barred from proceeding in the federal system with a valid application for special immigrant juvenile status and would face deportation to Guatemala. The order vacating that eligibility determination effectively terminates the application for legal permanent residence, clearly affecting a substantial right of both [minors]." *Id.*

We agree with this reasoning and therefore conclude we have jurisdiction to address the merits of petitioners' appeal.

¶ 14    No reported decision in Illinois addresses the issues presented here. State courts in a number of other jurisdictions have addressed issues relating to requests for predicate findings required for SIJ applications and so we examine those authorities for guidance. See *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 812 (2010) ("Although the decisions of foreign courts are not binding, 'the use of foreign decisions as persuasive authority is appropriate where Illinois authority on point is lacking or absent.' " (quoting *Carroll v. Curry*, 392 Ill. App. 3d 511, 517 (2009))). We begin by discussing the history of SIJ status under federal law.

¶ 15          The Immigration and Nationality Act of 1990 (Act) first established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States. *In re Israel O.,* 182 Cal. Rptr. 3d 548, 549 (Cal. Ct. App. 2015) (discussing history of SIJ status); see 8 U.S.C. § 1101(a)(27)(J) (Supp. I 2014) (current version of statute). The provisions for SIJ status, as applied to minors, were designed "to protect abused, neglected, or abandoned children, who, with their families, illegally entered the United States." *Yeboah v. United States Department of Justice,* 345 F.3d 216, 221 (3d Cir. 2003). These provisions also apply to children who legally entered the country, but who have fallen out of status and have elected to remain here. See *In re Mohamed B.*, 921 N.Y.S.2d 145 (N.Y. App. Div. 2011) (minor who overstayed visitor's visa entitled to pursue SIJ findings).

¶ 16          The criteria for eligibility for SIJ status have changed over time. As initially drafted, a literal reading of the statute permitted juveniles admitted to the United States as visiting students to apply for SIJ status. See *Yeboah*, 345 F.3d at 221. In 1997, the statute was amended to require that the juvenile be committed to or placed under the custody of a state agency or department and be found eligible for long-term foster care due to parental abuse, neglect or abandonment. *Id.* at 221-22. The requirement of eligibility for long-term foster care was modified in 2008 and, as presently formulated, the statute now requires that a state or juvenile court place the minor in the custody of either (i) a state agency or department or (ii) an individual or entity appointed by the court and that the dependency determination be due to a finding that reunification with one or both parents is not viable due to abuse, neglect or abandonment. 8 U.S.C. § 1101(a)(27)(J)(i) (Supp. I 2014). Separately, the court must also find that return to the

minor's country of nationality is not in the minor's best interest. 8 U.S.C. § 1101(a)(27)(J)(ii) (Supp. I 2014).

¶ 17 For SIJ purposes, the "appointment of a guardian constitutes the necessary declaration of dependency on the juvenile court." (Internal quotation marks omitted.) *In the Matter of Trudy-Ann W. v. Joan W.*, 901 N.Y.S.2d 296, 299 (N.Y. App. Div. 2010); see also *In re Minor Children J.E. & J.C.*, 74 A.3d 1013, 1018 (N.J. Super. Ct. Ch. Div. 2013) ("As a result of the removal of the foster care requirement, state courts may now make SIJ[] [status] findings whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone."). " 'The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.' " *In re Mario S.*, 954 N.Y.S.2d 843, 849 (N.Y. Fam. Ct. 2012) (quoting *In re J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. Ct. App. 2012)).

¶ 18 Implementing regulations require that an application for SIJ status attach an order from a state juvenile court containing the findings as set forth in the statute. 8 C.F.R. § 204.11(b), (d)(2) (2014). Once an order containing the required findings is entered, the juvenile may apply to the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) for SIJ status. At the same time, the juvenile files an application to become a lawful permanent resident. 3 Charles Gordon *et al.*, Immigration Law and Procedure § 35.09, at 35-46 to 35-47 (Matthew Bender rev. ed. 2015).

The SIJ application must be filed before the juvenile's 18th birthday.[1]  Approval of an application for SIJ status requires the consent of the Secretary of the Department of Homeland Security acting through the District Director of USCIS, which is "an acknowledgement that the request for SIJ classification is bona fide."  (Internal quotation marks omitted.)  *Id.* at 35-40 to 35-41.

¶ 19       If the application is granted, the juvenile may become a lawful permanent resident who, after five years, is eligible to become a United States citizen.  See *Zheng v. Pogash,* 416 F. Supp. 2d 550, 554 (S.D. Tex. 2006) (citing federal SIJ status petition guidelines). Denial of SIJ status renders the applicant subject to deportation.  Finally, SIJ status benefits only the juvenile; a parent whose child is granted SIJ status may not obtain immigration relief based on the child's status as a lawful permanent resident or United States citizen.  8 U.S.C. § 1101(a)(27)(J)(iii)(II) (Supp. I 2014) ("no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act").

¶ 20       Against this background, we examine the decisions from various foreign jurisdictions that have addressed issues pertaining to requests for SIJ predicate findings.

¶ 21       One theme that runs through several decisions is the state court's reluctance to make the requested findings based on policy concerns.  For example, in *Leslie H. v.*

---

[1] But see *Perez-Olano v. Holder*, a case in which USCIS entered into a settlement agreement in a class action involving juveniles who filed for SIJ status on or after May 13, 2005. U.S. Citizenship and Immigration Services, *Policy Memorandum* (June 25, 2015), http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2015/2015-0625_Perez-Olano_Settlement_Agreement_PM_APPROVED.pdf.  As part of the settlement, USCIS agreed to process SIJ applications for juveniles whose applications were denied, revoked or terminated based on the termination of the state dependency order due to the juvenile reaching the age of 18. *Id.*

*Superior Court*, 168 Cal. Rptr. 3d 729 (Cal. Ct. App. 2014), an immigrant minor was adjudicated delinquent of assault and burglary after she and two friends attempted to steal items from a liquor store. After her guilty plea, the minor was declared a ward of the court and committed to a juvenile detention facility. She then applied to the court for the necessary SIJ predicate findings. After a hearing at which evidence of the minor's abuse and abandonment by her biological parents was presented, the court declined to make the findings. The trial court concluded that Congress could not have intended to confer immigration benefits on juveniles adjudicated delinquent of criminal offenses. Further, the court determined that it was unable to find that (i) reunification was not viable because it doubted the juvenile's credibility and (ii) return to Mexico was not in the juvenile's best interest given her failure to attend school and criminal behavior while in the United States. Reversing, the California Court of Appeal concluded that the trial court had misapprehended its role in making the SIJ predicate findings:

> "A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." *Id.* at 737.

See also *Mario S.*, 954 N.Y.S.2d at 852-53 ("The juvenile court need not determine \*\*\* what the motivation of the juvenile in making application for the required findings might be [citations]; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety [citation]; and whether the USCIS \*\*\* may or may not grant a particular application for adjustment of status as a SIJ.").

¶ 22    Similarly, a court asked to make SIJ predicate findings need not discern a parent's motivation in abandoning the child. In *Eddie E. v. Superior Court*, 183 Cal. Rptr. 3d 773, 782 (Cal. Ct. App. 2015), the court observed:

> "Of course the SIJ statute was not designed to provide citizenship to petitioners who are comfortably living with a loving, supportive parent. But it is USCIS's role to determine whether the petitioner has applied for SIJ status primarily for the purpose of obtaining relief from abuse, neglect, or abandonment, not the state court's role."

In fact, in removal proceedings against a minor who sought SIJ status, the Board of Immigration Appeals determined that she did not qualify given that although a state court had ordered that her parents be removed as her guardians (by consent) and a family friend be appointed as her guardian, the minor had not shown that reunification with her parents was not viable due to abuse, neglect or abandonment. *In re Blanca Rocio Deleg-Vergara*, No. A088 793 320, 2010 WL 4509733, (BIA Oct. 29, 2010) (unpublished decision).

¶ 23    There is a split among reported authorities on the issue of whether, when the applicant shows that one parent has abused, neglected or abandoned the child, but the other has not, the predicate of abuse, neglect or abandonment by "1 or both" parents has been satisfied. 8 U.S.C. § 1101(a)(27)(J)(i) (Supp. I 2014). According to one line of cases, if the minor has been abused, neglected or abandoned by one parent, but is living with the other parent, an SIJ finding that reunification is not viable is not warranted. See *In re Erick M.*, 820 N.W.2d 639, 644 (Neb. 2012) (minor adjudicated delinquent for possession of alcohol and committed to treatment facility; although minor had no contact

with his father, he lived with his mother prior to the adjudication and wanted to return to her; while court found minor's proposed construction of the statute was reasonable, it nevertheless construed "1 or both" language as meaning that, depending on the minor's circumstances, "*either* reunification with one parent is not feasible *or* reunification with both parents is not feasible" (emphases in original)); *H.S.P. v. J.K.*, 87 A.3d 255, 266 (N.J. Super. Ct. App. Div. 2014) (trial court awarded custody of 17-year-old immigrant child to child's uncle, but refused to make SIJ findings; ruling affirmed where there was no evidence that minor's mother, who lived in India, had willfully neglected him although she was too poor to provide him sanitary living conditions, an education or medical care; thus, although father had abandoned the minor at birth, court construed "1 or both" language as requiring a showing that reunification with *neither* parent is viable).[2]

¶ 24    But other courts have reached the opposite conclusion. The court in *Eddie E.,* 183 Cal. Rptr. 3d 773, directly addressed and disagreed with the reasoning of *Erick M*. and *H.S.P.* In *Eddie E.*, the minor was a citizen of Mexico who came to this country with his mother at the age of five to reunite with his father. The minor's mother ultimately left the family and died several years later. The minor continued to live with his father and although he lived a hard life, his father never abused him. After the minor was adjudicated delinquent of several criminal offenses, he petitioned the court to make SIJ findings. *Id.* at 776. The trial court declined to make the findings, determining that because the minor's father never abused him, he could not establish that reunification with his father was not viable due to abuse or neglect and that the minor's inability to reunify with his mother was due to her death and not abandonment. *Id.* at 777. The court

---

[2]   The New Jersey Supreme Court has granted a petition for review in *H.S.P. v. J.K.*, 95 A.3d 258 (N.J. 2014).

further declined to find that return to Mexico was not in the minor's best interest. *Id.* The court of appeal reversed, finding that under the plain meaning of the statutory language, the minor's abandonment by one parent—his mother—sufficed. *Id.* at 783.

¶ 25    Fundamentally, the *Eddie E.* court concluded that the courts in *Erick M.* and *H.S.P.* misunderstood the role of state courts in making SIJ findings; state courts are not gatekeepers, charged with weeding out motions for SIJ findings that they believe are not *bona fide*:

> "Certainly, petitioner has presented a case from which a reasonable USCIS field director could conclude that petitioner has applied for SIJ status in good faith to obtain relief from his mother's abandonment.  On the other hand, a USCIS field director may determine that is not the case.  The problem with the *Erick M.* and *H.S.P.* interpretation is that it completely forecloses the ability of USCIS to make that determination.  Ultimately, immigration decisions are the purview of the federal government, not the state government.  [Citation.]  The *Erick M.* and *H.S.P.* courts improperly usurped that role." *Id.*

See also *Israel O.,* 182 Cal. Rptr. 3d at 556 ("We therefore conclude that an eligible minor under section 1101(a)(27)(J) includes a juvenile for whom a safe and suitable parental home is available in the United States and reunification with a parent in his or her country of origin is not viable due to abuse, neglect or abandonment."); *In the Matter of Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 722 (N.Y. App. Div. 2013) (minor placed in custody of her mother still eligible for SIJ findings where minor had been abandoned by her father).

¶ 26        USCIS, the agency charged with administering the Act, including applications for SIJ status, has taken the position that abuse, neglect or abandonment by one parent is sufficient for purposes of SIJ predicate findings.  See U.S. Citizenship and Immigration Services, *Immigration Relief for Abused Children*, at 1 (Apr. 2014), http://www.uscis.gov/sites/default/files/USCIS/Green%20Card/Green%20Card%20Thro ugh%20a%20Job/Immigration_Relief_for_Abused_Children-FINAL.pdf (providing that SIJ-eligible children may "[b]e living with a foster family, an appointed guardian, or the non-abusive parent"); see also *Marcelina M.-G.,* 973 N.Y.S.2d at 724 (referencing USCIS approval of SIJ status applications even though reunification with one parent was viable).  The agency's position has not been the subject of rulemaking and notice and comment and thus is not entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but we nevertheless believe it is a reasonable construction of the statute.  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (agency interpretations that are not the product of formal rulemaking are "entitled to respect *** but only to the extent that those interpretations have the power to persuade" (internal quotation marks omitted)).

¶ 27        Although, for reasons we discuss below, the record supports a finding that Nina has, in fact, been abandoned by both parents, we believe the position adopted by USCIS, *Eddie E.*, *Israel O.*, and *Marcelina M.-G.* adheres to the plain language of the statute, which is not ambiguous.  If Congress meant that an applicant for SIJ status was required to show that reunification with *both* parents was not viable due to abuse, neglect or abandonment, it could easily have so provided.  Use of the disjunctive indicates that abuse, neglect or abandonment by one parent is sufficient to support the predicate

finding. Whether it is sufficient to warrant consent to the application by the District Director of USCIS is an entirely separate issue, which is reserved for federal immigration authorities, not state courts.

¶ 28   In the context of this case, the fact of Nina's abandonment by her father is particularly significant. As noted above, Nina's father is a native of Taiwan where Nina was born. Nina is thus a citizen of Taiwan. Her mother is a native of the Philippines. We do not know whether Nina, soon to be an adult citizen of Taiwan, can be deported to the Philippines even if she maintains a relationship with her mother, who is presently subject to deportation. We have no expertise in the laws of Taiwan or the Philippines that would enable us to answer this question. And there is no indication in the record that, apart from her father, Nina has had contact with her relatives, if any, in Taiwan over the past 12 years. Thus, as a practical matter, Nina's abandonment by her father warrants a finding that return to the country of her birth (Taiwan) is not in her best interest wholly apart from the abandonment by her mother.

¶ 29   On the issue of Maria's abandonment of Nina, we understand the circuit court's reluctance to make the requested findings based, as we assume it was, on the court's skepticism regarding Maria's motives. But even if we assume that Maria's abandonment was motivated solely by the desire to give her daughter the opportunity to seek SIJ status, the fact is Maria *did* abandon Nina; Nina was placed under the coguardianship of petitioners precisely because there was no one else available to care for and make decisions for her. And just as Maria's motivation in abandoning her daughter was not relevant in the context of appointing petitioners to act as her guardians, so too is it irrelevant to the determination as to whether Nina has been abandoned for purposes of the

SIJ predicate findings. Again, the *bona fides* of and reasons for the abandonment are not our concern and will be addressed, to the extent that they are deemed relevant, in the context of Nina's application for SIJ status.

¶ 30 Further, the trial court would not find the answers to these questions in any evidentiary hearing. Again, it is undisputed that Nina has lived with petitioners for nearly a year and, although Nina has been in contact with Maria, she is not residing with Maria and Maria is not providing for her. There is no party opposing petitioner's motion for SIJ findings and thus the adversary process will not work to ferret out the truth or shed light on the reasons for Maria's conduct. And, given Maria's immigration status, her unwillingness to come to court to testify or otherwise explain her conduct or whereabouts is understandable.

¶ 31 We note that although the potential benefits associated with SIJ status are substantial, Nina's decision to pursue SIJ status is not without risk. Relief is not guaranteed and denial of the application renders Nina subject to deportation as an undocumented immigrant. 3 Charles Gordon *et al.*, Immigration Law and Procedure § 35.09, at 35-46 (Matthew Bender rev. ed. 2015). Given Nina's willingness to assume that risk and in light of the facts disclosed in the record before us, we believe Nina's opportunity to pursue SIJ status should not be thwarted by our refusal to make the findings necessary to allow her application to proceed.

¶ 32 CONCLUSION

¶ 33 On this record, which we review *de novo* given the lack of any factual or credibility determinations made by the trial court (see *People v. Nielson*, 187 Ill. 2d 271, 286 (1999) (*de novo* review appropriate where neither facts nor credibility of witnesses is

at issue)), we believe the trial court erred as a matter of law in refusing to make the requested findings. We reiterate, as we found in our August 25, 2015 order, that (i) reunification with one or both of Nina's parents is not viable due to abuse, neglect or abandonment and (ii) return to Taiwan is not in Nina's best interest.

¶ 34       Order vacated.