2020 IL App (2d) 200236
No. 2-20-0236
Opinion filed September 30, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF ERVIN C.-R., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| a minor | ) ) | |
| | ) ) | No. 19-F-270 |
| (Enriqueta A. R.-L., Petitioner-Appellant, v. Jasinto Santos C.-L., Respondent-Appellee). | ) ) ) | Honorable Neal W. Cerne, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1     This case presents questions regarding the state-court predicate findings for juvenile-immigration status changes. In the circuit court of Du Page County, Enriqueta A. R.-L., filed a petition to establish the parentage of Ervin C.-R., her son. Enriqueta sought an adjudication of parentage, an order granting her sole decision-making responsibilities, and an order enabling Ervin to apply for "Special Immigrant Juvenile" (SIJ) status under 8 U.S.C. 1101(a)(27)(J) (2018). The trial court found that Ervin had been abandoned by his father, respondent, Jasinto Santos C.-L., and the court granted Enriqueta sole decision-making responsibility and parenting time; however, the trial court found that Ervin was not abandoned for the purpose of issuing SIJ findings. We reverse.

¶ 2                                    I. BACKGROUND

¶ 3     We present the facts as drawn from the affidavits and testimony presented in the trial court at the hearing on the petition. Enriqueta was approximately 26 years old. Her son, Ervin, who was born in August of 2006, was now 14. Jasinto was approximately 36 years old. All of the parties are natives of Guatemala. Prior to the hearing, the court granted Enriqueta leave to serve by publication; Jasinto failed to appear and was defaulted.

¶ 4     According to Enriqueta, she and Jasinto were engaged in a sexual relationship in Guatemala from December 2005 to November 2006. As mentioned, Ervin was born in August 2006, and Jasinto was present when his son was born. Jasinto told his family that he was happy to have a son, and he is acknowledged as Ervin's father on Ervin's birth certificate from Guatemala. In November 2006, however, Jasinto left Guatemala and came to the United States. Enriqueta's last contact with Jasinto was a phone call in April 2007. Enriqueta and Ervin lived with Jasinto's mother in Huehuetenango, Guatemala, for a time.

¶ 5     In 2013, Enriqueta left Ervin with her parents, in Guatemala, and she came to the United States. Leaving Ervin in Guatemala "wasn't a permanent plan" and Enriqueta worked for three years "to come up with the money to bring [Ervin] over here." In November 2016, when Ervin travelled to the United States, he was intercepted and taken into federal custody. The following month, Ervin was released to Enriqueta by the Office of Refugee Resettlement (ORR). Since that time, Enriqueta and Ervin have resided in Du Page County and she has provided for Ervin's needs.

¶ 6     Enriqueta testified that it was not in Ervin's best interest to return to Guatemala, because her parents were elderly and could not care for him there. Enriqueta also stated that she could not afford to care for or educate Ervin in Guatemala.

¶ 7    Enriqueta testified that, in 2013, a coworker gave her an address for Jasinto in Bensenville, but when Enriqueta went to the address, Jasinto was not there. Enriqueta also searched for Jasinto online, but those efforts proved unsuccessful. In December 2019, Enriqueta enlisted her parents to locate Jasinto's parents in Huehuetenango, Guatemala, but learned that the family's land had been abandoned and that Jasinto's mother had passed away.

¶ 8    In its oral ruling, the trial court stated that it did not find that Ervin was "dependent" on the court "for anything" and questioned whether Ervin had been "abandoned," stating, "How has he been abandoned? He's with his mom." The court observed that its parentage adjudication would merely preserve the status quo: "I'm not changing any relationships by any stretch. Mother is here. She can provide for the child. The child has not been abandoned." Finally, the court stated, "I'm not going to make [SIJ] findings because the child has not been abandoned and the child is not dependent on this court for his care and custody."

¶ 9    Enriqueta timely appealed. After her notice of appeal was filed, Enriqueta sought leave to comply with the Illinois Supreme Court Rule regarding service of the notice of appeal (see Ill. S. Ct. R. 303(c) (eff. July 1, 2017)) by publication. We granted leave and notice was published in a local newspaper each week for three weeks. See generally *Mobley v. Murray*, 2015 IL App (1st) 134038-U, ¶ 12.

¶ 10                                    II. ANALYSIS

¶ 11   As this case is straightforward, we may decide this appeal without an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). In addition, as the trial court did not decide this case based on witness credibility, we review *de novo* its decision not to issue SIJ findings. See *In re Estate of Nina L.*, 2015 IL App (1st) 152223, ¶¶ 13,

33. Finally, this case presents a question of statutory interpretation, which we also review *de novo*. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 36.

¶ 12    SIJ findings enable a qualifying minor to petition the United States Citizenship and Immigration Services (USCIS) for an adjustment of status to become a lawful permanent resident (LPR). The Immigration and Nationality Act provides for these findings for an immigrant child

> "(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [and]
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(i)-(ii) (2018).

Federal regulations clarify that a "[j]uvenile court means a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a) (2019). We note that state-court SIJ findings are merely a predicate for the petition; whether to issue SIJ status is determined by the USCIS, after a more thorough inquiry (see 8 C.F.R. § 204.11(c) (2019)).

¶ 13    As counsel noted in the trial court, our state legislature recently enacted provisions mirroring federal law to provide for SIJ findings. See Pub. Act 101-121 (eff. Jan. 1, 2020); Pub.

Act 101-592 (eff. Nov. 25, 2019) (modifying effective date of Public Act 101-121). Relevant here, the Illinois Parentage Act of 2015 now provides as follows:

"§ 613.5. Special immigrant child findings.

(a) For the purpose of making a finding under this Section:

'Abuse' has the meaning ascribed to that term in subsection (1) of Section 103 of the Illinois Domestic Violence Act of 1986 [(750 ILCS 60/103 (West 2018))].

'Abandonment' includes, but is not limited to, the failure of a parent to maintain a reasonable degree of interest, concern, or responsibility for the welfare of the child or when one or both of the child's parents are deceased or cannot be reasonably located.

'Neglect' includes the meaning ascribed to the term in paragraph (a) of subsection (1) of Section 2-3 of the Juvenile Court Act of 1987 [(705 ILCS 405/2-3 (West 2018))] and the failure to perform caretaking functions as defined in subsection (c) of Section 600 of the Illinois Marriage and Dissolution of Marriage Act [(750 ILCS 5/600 (West 2018))].

(b) A court of this State that is competent to adjudicate parentage has jurisdiction to make the findings necessary to enable a child, who is the subject of a proceeding to adjudicate parentage, to petition the United States Citizenship and Immigration Services for classification as a Special Immigrant Juvenile under Section 1101(a)(27)(J) of Title 8 of the United States Code.

(c) If a motion requests findings regarding Special Immigrant Juvenile Status under Section 1101(a)(27)(J) of Title 8 of the United States Code, and the evidence, which may

consist solely of, but is not limited to, a declaration by the child, supports the findings, the court shall issue an order, that includes the following findings:

(1)(A) the child is declared a dependent of the court; or (B) the child is placed under the custody of an individual or entity appointed by the court; and

(2) that reunification of the child with one or both of the child's parents is not viable due to abuse, neglect, abandonment, or other similar basis; and

(3) that it is not in the best interest of the child to be returned to the child's or parent's previous country of nationality or last habitual residence." 750 ILCS 46/613.5 (West Supp. 2019).

Identical language was added to the Juvenile Court Act of 1987 (705 ILCS 405/2-4a (West Supp. 2019)), the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/603.11 (West Supp. 2019)), the Adoption Act (750 ILCS 50/17.01 (West Supp. 2019)), the Illinois Domestic Violence Act of 1986 (750 ILCS 60/214.5 (West Supp. 2019)), and the Probate Act of 1975 (755 ILCS 5/11-5.5 (West Supp. 2019)).

¶ 14   Returning to the questions presented in this case, first, we determine that the trial court erred in its interpretation of what it meant to be "dependent" on the court. See 750 ILCS 46/613.5(c)(1)(A) (West Supp. 2019). After examining the record, we conclude that the trial court apparently believed that it had to enter a finding of "dependency" (see 705 ILCS 405/2-4 (West Supp. 2019)) and appoint a guardian for Ervin to meet that requirement. In addition, the trial court read into the statute a requirement—that its order must "chang[e]" the "relationship[ ]" between the parties—that simply does not exist. The plain language of the statute indicates that a child need

not be placed in long-term foster care or have a nonparent guardian appointed in order to qualify for SIJ findings. See 750 ILCS 46/613.5(c)(1)(A), (B) (West Supp. 2019); see also *In re Estate of Nina L.*, 2015 IL App (1st) 152223, ¶¶ 15-17 (discussing federal legislative history and removal of long-term foster care requirements). Furthermore, the inclusion of this section under the *Parentage Act of 2015* indicates that the child need not be subject to child-protection proceedings under the Juvenile Court Act. Rather, as under federal law, a child may be considered *dependent* on the court when the court is required to make a "judicial determination[ ]" about the child's "custody and care." 8 C.F.R. § 204.11(a) (2019); see also *Perez v. Cuccinelli*, 949 F.3d 865, 868 (4th Cir. 2020) (*en banc*) (holding that an emergency *ex parte* custody order qualified for SIJ determination).

¶ 15    A judicial order allocating sole decision-making responsibility and parenting time is, unquestionably, an order affecting a child's custody and care. Accordingly, we determine that Ervin was dependent on the trial court for an order regarding his custody and care.

¶ 16    The second issue is whether a child may be considered abused, neglected, or abandoned when only one parent has abused, neglected, or abandoned the child, but the other has not. We note that the "one or both"-parents language is the same in both the federal law and the state statute. Moreover, this same issue was addressed in *In re Estate of Nina L.*, where, in interpreting federal law (8 U.S.C. § 1101(a)(27)(J)(i) (Supp. I 2014)), the court stated that:

> "If Congress meant that an applicant for SIJ status was required to show that reunification
> with *both* parents was not viable due to abuse, neglect or abandonment, it could easily have
> so provided. Use of the disjunctive indicates that abuse, neglect or abandonment by one
> parent is sufficient to support the predicate finding." (Emphasis in original.) *In re Estate of
> Nina L.*, 2015 IL App (1st) 152223, ¶ 27.

We find that the same reasoning applies to the state law at issue here, specifically, in both the definition of abandonment (750 ILCS 46/613.5(a) (West Supp. 2019)) and the showing that reunification is infeasible (750 ILCS 46/613.5(c)(2) (West Supp. 2019)). Accordingly, we determine that abuse, neglect, or abandonment by one parent is sufficient for the purposes of SIJ predicate findings.

¶ 17                                    III. CONCLUSION

¶ 18      We observe that the trial court made no best-interest finding, due to its findings on the first two SIJ factors. On our review of the record, we find that Enriqueta presented sufficient evidence for the trial court to determine whether it was in Ervin's best interest to return to Guatemala or to remain here with his mother. For the reasons stated, we reverse the judgment of the circuit court of Du Page County and remand this case for the entry of an order consistent with this opinion.

¶ 19      Reversed and remanded.

---

**No. 2-20-0236**

---

| | |
|---|---|
| **Cite as:** | *In re Parentage of Ervin C.-R.*, 2020 IL App (2d) 200236 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-F-270; the Hon. Neal W. Cerne, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | David M. Gotzh, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | No brief filed for appellee. |

---