*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of DARL.

| | |
|---|---|
| JUAN GARCIA ESCOBAR, Guardian of DARL, a minor, | FOR PUBLICATION<br>October 17, 2025<br>1:04 PM |
| Petitioner-Appellant. | |
| | No. 375449<br>Kent Circuit Court<br>LC No. 25-000430-GM |

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this case involving guardianship, petitioner, DARL's grandfather and former guardian, appeals by right the trial court's order denying petitioner's motion for Special Immigrant Juvenile (SIJ) findings. We vacate the trial court's order and exercise our discretion to make the following findings relevant to DARL's SIJ status by a preponderance of the evidence. We find that DARL was born on June 16, 2007, in Guatemala; she is under 21 years old; and she is an unmarried minor under the laws of the State of Michigan. We further find that: (1) DARL was declared dependent upon the State of Michigan Kent Circuit Court by virtue of guardianship proceedings, resulting in the appointment of petitioner as her temporary guardian until DARL reached 18 years of age; (2) DARL's reunification with her father is not viable because of her father's neglect, abuse, and abandonment of DARL; and (3) DARL's best interests would not be served by returning to her country of origin, Guatemala.

## I. BACKGROUND AND PROCEDURAL HISTORY

DARL has seven siblings; her mother and father are both alive. While living in Guatemala, DARL and her mother fled their home to live with DARL's grandmother to escape her father's abuse and neglect. DARL's mother earned a small income washing laundry, but she struggled to support her children and provide child care. Consequently, she forced DARL to leave school to care for her younger siblings. Throughout her childhood, instead of attending school, DARL

worked in a restaurant, helped her mother with labor, and performed tasks at her aunt's house, giving most of her earnings to her mother so the family could afford food and necessities.

When DARL was 16 years old, she came to the United States and began living with petitioner in Michigan. While living in Michigan, DARL enrolled in school and was in the tenth grade at the time of her testimony in this case. DARL continued to speak with her mother regularly.

In January 2025, petitioner requested to be appointed as DARL's guardian pursuant to MCL 700.5204(2)(b). At the same time, petitioner moved in the trial court to make special SIJ findings regarding DARL. Petitioner and DARL also requested, and were granted, the appointment of a foreign language interpreter who spoke the Quanjobal[1] language to assist them in this case. Although the petition for guardianship and the motion for SIJ findings were filed together, the trial court addressed them in two separate hearings. At the time of the guardianship hearing, the court was not prepared to proceed with the SIJ motion; therefore, the SIJ hearing was adjourned and conducted later. Additionally, both hearings also had to be rescheduled due to the unavailability of an interpreter. At the guardianship hearing, the trial court appointed petitioner as DARL's temporary guardian. However, at the SIJ hearing, the court denied the motion for the SIJ findings, citing "the totality of the circumstances" and noting that such findings "are really intended for children that are at high risk due to war or other maltreatment to prohibit their return home." This appeal followed.

## II. GUARDIANSHIP CHALLENGE

Petitioner challenges the trial court's decision to appoint petitioner as DARL's temporary guardian, rather than appointing him as DARL's full or "ordinary" guardian, as the petition requested.

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. Petitioner failed to preserve his challenge to the grant of a temporary guardianship because it was stated on the record that "[they] would not be opposed to a temporary guardianship." Consequently, he has waived the issue, and we need not address it. Furthermore, DARL has since turned 18 years old; therefore, her temporary guardianship has expired, just as a full guardianship would have.[2] Accordingly, this issue is moot; any judgment that we might issue regarding the guardianship in this case "cannot have any practical legal effect upon [an] existing controversy." *Anway v Grand Rapids Ry Co*, 211 Mich 592, 610; 179 NW 350 (1920) (quotation marks and citation omitted).

---

[1] Quanjobal is an indigenous Mayan language spoken in northwestern Guatemala. It is linguistically distinct from Spanish.

[2] A guardian's authority and responsibility terminate upon the minor's attainment of majority. MCL 700.5217.

### III. CONSTITUTIONAL CHALLENGE

Petitioner next argues that the trial court's delay in hearing the guardianship petition and the SIJ motion violated petitioner's constitutional rights to due process of law.

Petitioner also raises this constitutional challenge for the first time on appeal. We accordingly determine that this issue is waived and decline to address petitioner's due-process claim. See *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289. In so deciding, we are mindful that "it is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *J & J Const Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003).

### IV. APPOINTMENT OF A FOREIGN LANGUAGE INTERPRETER

Petitioner also argues that the trial court erred by rescheduling the SIJ motion hearing due to interpreter unavailability, instead of allowing a virtual language interpreting service. We disagree.

We review for an abuse of discretion a trial court's decision whether to appoint an interpreter. *People v Warren (After Remand)*, 200 Mich App 586, 591; 504 NW2d 907 (1993). "A court abuses its discretion if it chooses an outcome outside the range of reasonable and principled outcomes." *In re Velasquez*, 344 Mich App 118, 127; 998 NW2d 898 (2022) (quotation marks and citation omitted). A trial court "necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citation omitted). We review de novo the interpretation of court rules. *Wilcoxon v Wayne Co Neighborhood Legal Servs*, 252 Mich App 549, 553; 652 NW2d 851 (2002).

MCR 1.111 governs the appointment of foreign language interpreters. Under MCR 1.111(B)(1), when a party or witness requests an interpreter and the court determines such services are necessary for meaningful participation, or when the court makes that determination on its own, the court *must* appoint an interpreter. Once this determination is made, the trial court has a continuing obligation to ensure that interpreter services remain adequate throughout the proceedings, safeguarding the individual's ability to fully understand and participate in the case. *In re Guardianship of DRRR*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372523); slip op at 6. Whenever practicable, the interpreter must be certified by the State Court Administrative Office (SCAO). MCR 1.111(F)(1), (A)(4). However, when a SCAO-certified interpreter is not reasonably available, "after considering the gravity of the proceedings and whether the matter should be rescheduled," the court *may* appoint a "qualified"[3] or "capable"[4]

---

[3] MCR 1.111(A)(6) outlines the detailed criteria for an interpreter to be considered "qualified."

[4] The court determines a potential interpreter's capability through voir dire, during which the court assesses whether the interpreter can convey the intent and content of the speaker's words sufficiently to allow the court to conduct the proceeding without prejudice to the speaker. MCR 1.111(F)(2).

interpreter. MCR 1.111(F)(1), (2). The term "may" is permissive and indicates discretion to take a particular action. See *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993).

In *In re Guardianship of DRRR*, this Court recently emphasized "the critical role that foreign language interpreters play in facilitating meaningful access to justice for those whose English skills are lacking." *In re Guardianship of DRRR*, ___ Mich App at ___; slip op at 6. In that case, the trial court erred when it violated MCR 1.111(B)(1) by requiring DRRR, a minor immigrant seeking SIJ status, to make multiple requests for an interpreter in each proceeding—after the court had already determined that DRRR required an interpreter. *Id.* The court also erred in its handling of the interpreter at DRRR's SIJ hearing. The trial court noted that there was no SCAO-certified interpreter present in the courtroom but then violated MCR 1.111(F)(2) by refusing to voir dire another capable interpreter who *was* physically present. *Id.* The trial court also refused to use a SCAO-certified interpreter who could appear virtually. *Id.* at 2. Instead, the trial court briefly delayed the hearing to give DRRR time to procure a SCAO-certified interpreter who could appear in person. *Id.* at 2, 6. DRRR's counsel procured such an interpreter in time for the delayed hearing. *Id.* at 2-3. But the trial court refused—without explanation—to recall the case, thereby necessitating *another* hearing, which took place after DRRR turned 18 years old. *Id.* at 6-7. At the final hearing, the trial court denied the SIJ motion, claiming it lacked jurisdiction over DRRR because she was 18 years old. *Id.* at 3. This Court determined that the trial court's multiple "critical" errors resulted in DRRR being denied meaningful access to justice. *Id.* at 6.

In the instant case, petitioner requested an interpreter for her SIJ hearing, and the court clearly was required to procure one. MCR 1.111(B)(1); *In re Guardianship of DRRR*, ___ Mich App at ___; slip op at 6. However, when petitioner's counsel attended DARL's virtual SIJ hearing, she learned that no interpreter had been procured, so the hearing would need to be rescheduled. On appeal, petitioner argues that the court erred when petitioner's counsel suggested the use of a virtual language interpreting service, but the trial court chose instead to reschedule the hearing, which took place approximately two weeks later with an interpreter—before DARL's eighteenth birthday.

This stands in stark contrast to the trial court in *In re Guardianship of DRRR*, who refused to voir dire a present, willing interpreter; refused to use the proffered virtual interpreter; refused to recall the case when the petitioner produced a certified, in-person interpreter; and ultimately, delayed the case so long that the minor turned 18 years old and the court declined to take jurisdiction. In this case, although the trial court initially failed to procure an interpreter, the court took care to conduct the SIJ hearing with the requisite interpreter *and* make its determinations before DARL reached the age of majority. Therefore, any initial failure to secure an interpreter at DARL's SIJ hearing did not deny her meaningful access to justice. See *In re Guardianship of DRRR*, ___ Mich App at ___; slip op at 6. Under these circumstances, we cannot conclude that the trial court's decision to reschedule the SIJ motion for a later date was an unreasonable or unprincipled decision. See *In re Velasquez*, 344 Mich App at 127.

## V. SIJ DETERMINATION

The heart of petitioner's appeal is that the trial court abused its discretion by denying the motion for SIJ findings. Petitioner argues that the trial court erred by applying the wrong standard of proof when deciding the motion and asks this Court to make the factual determinations

regarding DARL's SIJ status pursuant to MCR 7.216(A)(7). We do not agree that the trial court applied an improper standard of proof when deciding the motion. However, we agree that the trial court abused its discretion when deciding the motion. Because the record provides the necessary evidence and we believe that it promotes the interests of justice to do so, we will make the predicate factual findings relevant to DARL's SIJ status.

## A. PRESERVATION AND STANDARD OF REVIEW

As stated, "[i]n civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289 (quotation marks and citation omitted). "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. Petitioner did not challenge the standard of proof in the proceedings below. Therefore, we could deem this issue waived. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citations omitted). Given that consideration of this issue is necessary for a proper determination of the case, we overlook the preservation requirement in this instance.

We review de novo whether the trial court applied the correct standard of proof because it presents a question of law. *Griffin v Griffin*, 323 Mich App 110, 118; 916 NW2d 292 (2018). "We review for an abuse of discretion a probate court's dispositional rulings and review for clear error the factual findings underlying its decision." *In re Velasquez*, 344 Mich App at 127. A finding is clearly erroneous when, even if some evidence supports the finding, we are nevertheless definitely and firmly convinced that the lower court made a mistake. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We give broad deference to the trial court's findings of fact and credibility determinations "because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily ascertainable to the reviewing court." *In re Velasquez*, 344 Mich App at 127. See MCR 2.613(C).

## B. ANALYSIS

### 1. STANDARD OF PROOF

Petitioner argues that the trial court erred by applying "clear and convincing" standard instead of the "preponderance of the evidence" standard. We disagree.

Petitioner's claim that the trial court applied an incorrect standard of proof is grounded in the trial court's statements at the motion hearing. The court said, "The facts which I have heard would not be sufficient in this country, in Michigan, in Kent County[,] to take wardship over a child and nor does the Court find that the situation with the father would result in a finding that reunification is not viable."

Because the trial court used the term "wardship," petitioner infers that the court meant that the facts would have been insufficient to terminate DARL's parents' rights and that it applied the clear-and-convincing evidence standard. Petitioner points to the DHHS's Children's Foster Care Manual in support of this inference. The manual states that a "Permanent Court Ward" is "[a]

child whose parents' rights have been terminated by the court with jurisdiction over the child." However, the manual also states that a "Temporary Court Ward" is "[a] child who has been determined by the court to come within its jurisdiction due to the parents' unwillingness or inability to provide adequate or appropriate care. In this situation, parental rights to the child have not been terminated." Department of Health and Human Services, *Children's Foster Care Manual: Legal Status*, pp 791-792, available at <https://mdhhs-pres-prod.michigan.gov/OL MWeb/ex/FO/ Mobile/FOM/FOM%20Mobile.pdf> (accessed October 3, 2025).[5]

Because the SIJ statute does not provide a standard of proof, the default standard in civil cases, the preponderance-of-the-evidence standard, applies to SIJ factual findings. *In re Velasquez*, 344 Mich App at 135. "A trial judge is presumed to know the law." *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (quotation marks and citation omitted).

Petitioner misrepresents the court's reasoning. In denying the request for SIJ findings, the court considered the "totality of the circumstances" but did not require proof equivalent to wardship-level standards. Although the trial court's language may have been imprecise, its decision rested on evidentiary insufficiency. Accordingly, we conclude that the trial court applied the correct preponderance-of-the-evidence standard governing such determinations.

## 2. SIJ FINDINGS

Next, we consider whether the trial court erred by denying the motion for SIJ findings.

"The Immigration and Nationality Act of 1990 [8 USC 1101 *et seq*.,] established SIJ status as a path for resident immigrant children to achieve permanent residency in the United States." *In re Velasquez*, 344 Mich App at 128 (quotation marks and citation omitted). Obtaining SIJ status is "a unique hybrid procedure that directs the collaboration of state and federal systems." *Id*. (quotation marks and citation omitted). The state court must first make certain factual findings in accordance with 8 USC 1101(a)(27)(J) and 8 CFR 204.11 (2022). *Id*. at 128-129.

In *In re Velasquez*, this Court explained the process for obtaining SIJ status as follows:

First, the state court makes predicate factual findings pertinent to the juvenile's SIJ status. The state court must find that the individual who seeks SIJ status is under the age of 21, unmarried, and (1) dependent on the juvenile court, (2) cannot viably be reunified with one or both of their parents because of neglect, abandonment, or a similar basis found under state law, and (3) the juvenile's best interests would not be served by returning to their country of origin. The findings made by the state court only relate to matters of child welfare, a subject traditionally left to the jurisdiction of the states, and are made according to state law. [*Id.* (quotation marks and citations omitted).]

---

[5] The Children's Foster Care Manual was updated on August 1, 2025. However, the portion relevant to this case has not changed.

Additionally, relevant to this appeal, 8 CFR 204.11 (2022) adds that "[t]he court is not required to terminate parental rights to determine that parental reunification is not viable," 8 CFR 204.11(c)(1)(*ii*), and that "[n]othing in this part should be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law," 8 CFR 204.11(c)(2)(*ii*).

"The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a 'juvenile court.' " *In re Velasquez*, 344 Mich App at 129 (quotation marks and citation omitted). A "juvenile court" is "a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles." 8 CFR 204.11(a). "After the state court makes the predicate findings, the juvenile applies to the USCIS [United States Citizenship and Immigration Services] for SIJ status." *In re Velasquez*, 344 Mich App at 129. The USCIS then conducts a "much broader inquiry" and ultimately decides whether to grant the juvenile SIJ status. *Id*.

Relevant to determining whether reunification is not viable because of "neglect, abandonment, or a similar basis," the Immigration and Nationality Act of 1990 does not define the terms "neglect," "abandonment," or the related term of "abuse." For SIJ cases, we instead look to the definition of those terms presented in other Michigan statutes. *In re Velasquez*, 344 Mich App at 135-136.

The Child Abuse and Neglect Prevention Act, MCL 722.601 *et seq*., defines "child abuse" as

> harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through nonaccidental physical or mental injury; sexual abuse, which includes a violation of section 145c of the Michigan penal code, 1931 PA 328, MCL 750.145c. [MCL 722.602(b).]

That act also defines "neglect" as

> harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [MCL 722.602(d).]

Michigan's probate code adopts the definition of "neglect" from MCL 722.602. MCL 712A.2(b)(1)(B).

Michigan's Child Protection Law, MCL 722.621 *et seq*., defines "child abuse" as

> harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, any other person responsible for the

child's health or welfare, a teacher, a teacher's aide, a member of the clergy, or an individual 18 years of age or older who is involved with a youth program. [MCL 722.622(g).]

Michigan's Child Protection Law defines "child neglect" as

harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

(*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

(*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622(k).]

Michigan's Uniform Child-Custody Jurisdiction and Enforcement Act, MCL 722.1101 *et seq*., defines the term "abandoned," as used in that act, as "left without provision for reasonable and necessary care or supervision." MCL 722.1102(a).

We now look to the SIJ status criteria. In the SIJ context, the trial court's role is that of a fact-finder regarding the child's welfare. As discussed, for SIJ status, a state court must find "the juvenile is declared dependent by a juvenile court." *In re Velasquez*, 344 Mich App at 132, citing 8 USC 1101(a)(27)(J). Petitioner was appointed as DARL's temporary guardian. The trial court did not specifically state that the first SIJ criterion had been met; however, the court acknowledged the fact of DARL's temporary guardianship on the record. A temporary guardian has "the status of an ordinary guardian of a minor." MCL 700.5213(3). Under immigration regulations, a temporary guardianship is treated the same as a permanent guardianship for SIJ purposes, because both create a dependency on the juvenile court. See 8 CFR 204.11(c)(1)(i)(B) (2022). Accordingly, while petitioner served as DARL's temporary guardian, DARL was dependent on the court for purposes of the SIJ classification, as DARL had been "placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States . . . ." 8 USC 1101(a)(27)(J)(*i*). We determine that a preponderance of the evidence establishes that the first criterion for SIJ findings was met.[6]

The next question is whether reunification with one or both of DARL's parents was not viable because of neglect, abuse, or abandonment of DARL. DARL's father drank alcohol

---

[6] This Court has previously determined that SIJ findings were appropriate when the minor had been made subject of a guardianship. See *In re Velasquez*, 344 Mich App at 124-125; see also *In re Guardianship of DRRR*, ___ Mich App at ___; slip op at 10.

regularly and abused her, her mother, and her siblings when he was drunk. He would hit DARL with a stick, belt, or whatever was available to him. DARL and her siblings sometimes went hungry because her father spent the money meant to buy food for them on alcohol instead. When DARL was 14 years old, her mother took her and her siblings to live with DARL's grandmother to escape father's abuse. DARL's father never visited her grandmother's home; nor did he provide any financial support. DARL had no further contact with her father.

A preponderance of the evidence shows that DARL's father neglected and abused DARL and her mother, so much so that they were forced to flee from him. DARL's father subsequently abandoned DARL by failing to provide any financial support for her. Nothing in the record suggests that DARL's father would not continue his neglectful and abusive conduct were he to reunify with DARL. As such, we are definitely and firmly convinced that the trial court made a mistake by finding that reunification with DARL's father was viable.

And because reunification with DARL's father was not viable, the analysis must proceed to a best-interest determination, without regard to whether reunification with DARL's mother was viable. Importantly, 8 USC 1101(a)(27)(J) defines a "special immigrant" as an immigrant who is present in the United States and in pertinent part:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with *1 or both of the immigrant's parents* is not viable due to abuse, neglect, abandonment, or a similar basis found under State law. [Emphasis added.]

We conclude that the statutory phrase "1 or both" in 8 USC 1101(a)(27)(J)(i) requires a showing that reunification with at least one parent is not viable due to abuse, neglect, or abandonment. The plain language of the statute makes clear that proof of inability to reunify with just one parent is sufficient; it does not require a showing for both parents. Accordingly, because the statute requires only that reunification with one parent is not viable, our findings as to DARL's father are sufficient to satisfy the statutory requirement. Whether DARL's mother also engaged in abuse or neglect is, therefore, not material to our review. We decline to examine or opine on those facts. Under our construction, the record establishes that DARL satisfied the second SIJ criterion by a preponderance of the evidence because she could not be viably reunified with her father.

The last question is whether returning to Guatemala was in DARL's best interests. For purposes of SIJ findings, the trial court can consider the best-interest factors set out in the Child Custody Act of 1970, MCL 722.21 *et seq.*, MCL 722.23; MCL 710.22(g) of the Michigan Adoption Code, MCL 710.21 *et seq.*; "or a unique set of factors developed by the trial court . . . ." *In re Velasquez*, 344 Mich App at 144-145 (quotation marks and citation omitted).

In this case, considering the factors in MCL 722.23 and MCL 710.22(g), the record establishes that DARL could not have viably returned to her father or she may have faced additional physical abuse. In contrast, in the United States, petitioner was able to provide adequately for DARL, and DARL was attending high school. Petitioner was capable of providing

DARL with appropriate guidance and discipline and has a good relationship with her. DARL testified that her preference was to remain in Michigan with petitioner and attend school. In Guatemala, DARL would have no support; DARL's mother does not have the resources to provide for DARL or allow her to continue her education. DARL would have to stop attending school and work to support herself. In the United States, DARL has her needs met by petitioner, and DARL will be able to continue attending school. "Whether using the child custody factors, adoption factors, or a combination of factors," a preponderance of the evidence supports our finding that it is not in DARL's best interests to return to Guatemala. *In re Velasquez*, 344 Mich App at 146-147.

Finally, we also conclude that the trial court made an error of law when it determined that the SIJ process was not intended for minors like DARL. In particular, the trial court stated that the court saw motions for SIJ findings "routinely" in cases involving children who were orphaned, subjected to human trafficking, or for whom war made returning to their home countries unsafe. The court then stated, "[A] family helping family does not lead the Court to make findings that are really intended for children that are at high risk due to war or other maltreatment to prohibit their return home." To the contrary, as discussed, the facts in the record support that DARL *was* the type of minor for whom SIJ proceedings are intended, in light of our determinations that (1) DARL is dependent on the juvenile court, (2) DARL cannot viably be reunified with at least one parent because of neglect and abandonment, and (3) DARL's best interests would not be served by returning to Guatemela.

Moreover, "[t]his Court has recognized that the juvenile court's special findings are limited to child welfare determinations and that the juvenile court is not to engage in an immigration analysis or decision . . . ." *In re Velasquez*, 344 Mich App at 141 (quotation marks and citation omitted; ellipsis in original). The trial court's role in this case was to determine if abuse, neglect, or abandonment prevented DARL from being reunified with a parent and whether being returned to Guatemala was in her best interests. The court's consideration whether DARL was the sort of minor for whom SIJ findings are intended, or the worthiness of other minors in other circumstances, was an error of law that was "wholly improper and erroneous." *Id*. "[S]tate courts are not gatekeepers, charged with weeding out motions for SIJ findings that they believe are not bona fide[.]" *In re Estate of Nina L ex rel Howerton*, 2015 IL App (1st) 152223, ¶ 25; 41 NE3d 930 (2015).[7]

---

[7] Caselaw from sister states is not binding precedent but may be relied on for its persuasive value. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020).

MCR 7.216(A)(7) authorizes us, in our discretion, and on terms we deem just, to "enter any judgment or order or grant further or different relief as the case may require[.]" Therefore, in light of our findings that DARL satisfies the criteria for SIJ status, we conclude that we must vacate the trial court's order denying petitioner's motion for SIJ status.

Vacated and remanded for entry of this Court's special findings regarding DARL's SIJ status. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin